UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

SETARA TYSON,
    Plaintiff,

-vs-                              Case No.
                                    Hon.
                                    **DEMAND FOR JURY TRIAL**

JOHN R SERVICE CENTER INC.,
CREDIT ACCEPTANCE CORPORATION,
AL CHAMI, and
RAMI KAMIL,
    Defendants.

## **COMPLAINT & JURY DEMAND**

*Setara Tyson the following claims for relief:*

### **Jurisdiction**

1. This court has jurisdiction under the Truth In Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331,1337.

2. This court has jurisdiction under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq* and 28 U.S.C. §§ 1331,1337.

3. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims under 28 U.S.C. § 1367. All claims and allegations in this complaint arise out of the same transaction relating to the purchase of a car on August 10, 2013 by Setara Tyson.

### **Parties**

4. The Plaintiff to this suit is Setara Tyson who is an individual living in Wayne County Michigan.

5. The Defendants to this lawsuit are as follows:

1

  a. John R Service Center Inc. ("Car Source") which is a corporation doing business in Michigan at 19100 John R., Detroit, MI 48203, and which by statute and condition of licensing, may be served through the Michigan Department of State, Compliance Division, 3rd Floor – Treasury Building, 430 W. Allegan Street, Lansing, MI 48918.

  b. Credit Acceptance Corporation ("CAC") which is a corporation doing business in Michigan.

  c. Al Chami is an individual who works for Car Source and was the salesman in the transaction underlying this case.

  d. Rami Kamil is the owner of Car Source.

## Venue

6. The transactions and occurrences which give rise to this action occurred in Wayne County.

7. Ms. Tyson is a citizen of the State of Michigan and resides in Wayne County.

8. Venue is proper in the Eastern District of Michigan.

## Related Case

9. The claims involved in this case arise out of a "spot delivery" fraud which gives rise to the same legal theories as are currently at issue in the case of *Bootz v Lasco Ford*, pending before Judge Arthur Tarnow, Case No. 13-cv-11231-AJT-RSW.

## General Allegations

10. On August 10, 2013, Ms. Tyson went to Car Source for the purpose of purchasing a vehicle.

11. At the time, Ms. Tyson had qualified for a program under which the State of Michigan provided Ms. Tyson with $1,200 from the Family Independence Agency for a down payment

on the vehicle.

12. Car Source requested that Ms. Tyson complete a credit application.

13. Ms. Tyson completed that credit application accurately and truthfully.

14. Ms. Tyson presented two pay stubs from her employer – McDonalds – establishing her biweekly pay of approximately $500.

15. Ms.Tyson provided Car Source with copies of a Bank Statement from her Bank of America Account.

16. Car Source informed her that her credit application was being acted on by Credit Acceptance Corporation.

17. Car Source informed Ms. Tyson that she had been approved for credit and that Credit Acceptance would purchase the installment contract from Car Source at the time of the sale.

18. Car Source is a creditor for purposes of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq.

19. Credit Acceptance Corporation is a creditor for purposes of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq.

20. Ms. Tyson executed a purchase agreement with Car Source for the 2006 Chevrolet Cobalt, VIN 1G1AL58F867600940 ("the vehicle").

21. Car Source presented purchase documents identifying itself as the installment seller and creditor for purposes of the Truth In Lending Act, 15 U.S.C. § 1601 et seq.

22. Car Source identified Credit Acceptance Corporation as the lien holder and assignee of Ms./ Tyson's retail installment sale contract.

23. Ms. Tyson obtained a check for $1,200 from the Family Independence Agency and tendered that check as a down payment, along with an addition $48 in cash of her own.

24. Ms. Tyson secured insurance for the vehicle and provided proof of that insurance to Car Source.

25. Car Source provided Ms. Tyson with a receipt for the $1,200.

26. Car Source affixed a license plate to the vehicle and delivered the keys to Ms. Tyson.

27. Ms. Tyson left with the car.

28. At that time, Ms. Tyson owned the car.

29. Two days later, Al Chami from Car Source called Ms. Tyson and informed her that the deal for the vehicle – along with all the paperwork – needed to be rewritten and that they needed to install a new GPS unit in the vehicle.

30. When Ms. Tyson returned to Car Source, her salesman Al, asked her for the keys in order to install the new GPS unit which he was holding in his hands.

31. Ms. Tyson presented him with the keys.

32. Al Chami took the keys, and drove the car to the service bay.

33. Al Chami and Rami Kamil proceeded to empty Ms. Tyson's belongs from the car.

34. Al Chami and Rami Kami dumped those belongings at Ms. Tyson's feet along with her key chain, minus the key for the Cobalt.

35. Ms. Tyson asked what was happening and Al Chami proceeded to tell Ms.Tyson that the deal had fallen through.

36. Al Chami and Rami Kamil then demanded $1,500 which they claimed that Car Source was entitled to if Ms. Tyson wanted to keep the car.

37. Ms. Tyson did not have $1,500 to give Car Source.

38. The Car Source staff then unleashed a torrent of insults at Ms. Tyson and her family, calling them ignorant and swearing at them.

39. Al Chami and Rami Kamil refused to return the car to Ms. Tyson, and kept it from her without her consent, even though she had not breached her contract.

40. Car Source has retained the down payment for the car and provided no notice of breach.

41. Neither Car Source, nor its staff had any legal right to keep the vehicle from Ms. Tyson.

42. The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. §440.2101 et seq.

## **COUNT I – Truth In Lending Act (Car Source)**

43. Ms. Tyson the preceding allegations by reference.

44. At all relevant times Car Source -- in the ordinary course of its business -- regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than 4 installments and is the person to whom the transaction which is the subject of this action is initially payable, and is a "creditor" under TILA, 15 U.S.C. § 1602(f) and regulation Z § 226.2(a)(17).

45. Car Source failed to accurately disclose the cash price of the vehicle as including the $1,500 that it subsequently claimed it was entitled to.

46. The failure to properly disclose the cash price of the vehicle consequently caused a failure to inaccurately disclose the amount financed in violation of 15 U.S.C. § 1638; 16 CFR § 226.18 (b) and (c).

47. Car Source improperly itemized a charge in the amount of  for an additional down payment of $1,500 as an amount financed when in fact that charge was a finance charge within the

meaning of Reg Z § 226.4.

48. Car Source failed to accurately disclose the applicable finance charge as required by 15 U.S.C. § 1638 and Reg Z § 226.18(d)

49. Car Source failed to accurately disclose and itemize the amount financed in violation of 15 U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

50. As a consequence of failing to accurately state the actual finance charge, Car Source also misstated the applicable "APR" in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

51. Car Source failed to accurately disclose the applicable "APR" as required by 15 U.S.C. § 1638; Reg Z § 226.18(32); Reg Z § 226.22.

52. Ms. Tyson suffered damages as a result of this violation of the TILA.

## COUNT II – Equal Credit Opportunity Act (Car Source)

53. Ms. Tyson the preceding allegations by reference.

54. Ms. Tyson submitted a credit application to Car Source relating to the acquisition of the vehicle.

55. Car Source was required under ECOA to take action on Ms. Tyson's credit application within 30 days.

56. Car Source initially informed Ms. Tyson that the credit application submitted by Ms. Tyson had been approved.

57. At the time that Car Source informed Ms. Tyson that the credit application was approved, Car Source knew that the credit application had not been finally acted upon, and that Car Source would treat the approval as conditional.

58. Car Source later revoked the approval.

59. The initial credit approval by Car Source was false and Car Source knew the notice to be false at the time it was issued, as it knew that it treated all credit approvals as conditional until funding.

60. The false credit approval by Car Source was false and therefore in violation of the ECOA.

61. Ms. Tyson suffered damages as a result of this violation of the ECOA.

### COUNT III – Equal Credit Opportunity Act (CAC)

62. Ms. Tyson the preceding allegations by reference.

63. Ms. Tyson submitted a credit application to CAC relating to the acquisition of the vehicle.

64. CAC was required under ECOA to take action on Ms. Tyson's credit application within 30 days.

65. CAC informed Ms. Tyson that her credit application had been approved.

66. At the time that CAC informed Ms. Tyson that the credit application was approved, CAC knew that the credit application had not been finally acted upon, and that CAC would treat the approval as conditional.

67. CAC later revoked the approval without default by Ms. Tyson.

68. The initial credit approval by CAC was false and CAC knew the notice to be false at the time it was issued, because CAC treats all approvals a conditional pending a funding decision.

69. The false credit approval by CAC was false and therefore in violation of the ECOA.

70. Ms. Tyson suffered damages as a result of this violation of the ECOA

### COUNT IV – Common Law Conversion (Car Source)

71. Ms. Tyson the preceding allegations by reference.

72. Car Source has converted the vehicle.

73. Ms. Tyson suffered damages as a result of this conversion.

### COUNT V – Statutory Conversion (Car Source)

74. Ms. Tyson the preceding allegations by reference.

75. After obtaining Ms. Tyson signature on all documents necessary to convey title and complete the financing of the vehicle, Car Source delivered the vehicle to Ms. Tyson.

76. Car Source took the vehicle from Ms. Tyson.

77. Car Source had no right to possess the vehicle.

78. Car Source was not acting on behalf of any individual or entity with the right to possess the vehicle.

79. Car Source illegally retook possession without the permission of Ms. Tyson or other legal authorization.

80. Car Source's actions in taking possession of the vehicle was wilful or intentional, and in derogation of he contract of sale.

81. These acts constitute a willful or intentional conversion under M.C.L. § 600.2919a.

82. Ms. Tyson suffered damages as a result of this violation of the Michigan Conversion Statute.

### COUNT V – Statutory Conversion (Al Chami)

83. Ms. Tyson the preceding allegations by reference.

84. Al Chami took the vehicle from Ms. Tyson.

85. Al Chami had no right to possess the vehicle.

86. Al Chami was not acting on behalf of any individual or entity with the right to possess the vehicle.

87. Al Chami illegally retook possession without the permission of Ms. Tyson or other legal authorization.

88. Al Chami's actions in taking possession of the vehicle was wilful or intentional, and in derogation of he contract of sale.

89. These acts constitute a willful or intentional conversion under M.C.L. § 600.2919a.

90. Ms. Tyson suffered damages as a result of this violation of the Michigan Conversion Statute.

### COUNT V – Statutory Conversion (Rami Kamil)

91. Ms. Tyson the preceding allegations by reference.

92. Rami Kamil assisted in taking and secreting of the vehicle from Ms. Tyson.

93. Rami Kamil had no right to possess the vehicle or keep it from Ms. Tyson.

94. Rami Kamil was not acting on behalf of any individual or entity with the right to possess the vehicle.

95. Rami Kamil illegally retook possession without the permission of Ms. Tyson or other legal authorization.

96. Rami Kamil's actions in taking possession of the vehicle was wilful or intentional, and in derogation of he contract of sale.

97. These acts constitute a willful or intentional conversion under M.C.L. § 600.2919a.

98. Ms. Tyson suffered damages as a result of this violation of the Michigan Conversion Statute.

### COUNT VI – Motor Vehicle Sales Finance Act (Car Source)

99. Ms. Tyson the preceding allegations by reference.

100. This claim is brought under the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. §492.101 *et seq*.

101. Car Source failed to properly include in the retail installment contracts each and every one of the material terms of the installment sale, and omitted the single most relevant term, namely whether the deal was final or conditional and whether Ms. Tyson was required to pay the additional $1,500 to keep the vehicle, in violation of M.C.L. § 492 112(a).

102. Car Source imposed uponMs. Tyson's charges which are not authorized by the MVSFA in violation of M.C.L. § 492.131.

103. Ms. Tyson suffered damages as a result of this violation of the MVSFA.

## COUNT VII – UCC Article 9 (Car Source)

104. Ms. Tyson the preceding allegations by reference.

105. This claim is brought under Article 9 of the revised Uniform Commercial Code, M.C.L. § 440.9101 *et seq*.

106. Car Source effected this repossession wrongfully, and without legal right.

107. As a result of this wrongful repossession, Car Source was proceeding in violation of Article 9 of the UCC, M.C.L. § 4409.9609.

108. Car Source failed to send a proper notice of intent to dispose of the property to Ms. Tyson.

109. The failure to send this notice constituted a violation of Article 9 of the UCC, M.C.L. § 440.9611.

110. Ms. Tyson suffered the damages as a result of this violation of Article 9 of the UCC.

## COUNT VII – Michigan Credit Reform Act (Car Source)

111. Ms. Tyson the preceding allegations by reference.

112. This claim is brought under the Credit Reform Act, M.C.L. § 445.1851 *et seq*, which will be referred to as the CRA throughout the remainder of this complaint.

113. Car Source is a regulated lender within the meaning of the CRA, M.C.L. § 445.1851 *et seq*.

114. Car Source imposed upon Ms. Tyson's fees which are in excess of those authorized by the CRA, M.C.L. §445.1851 *et seq.*

115. Ms. Tyson suffered damages as a result of this violations of the CRA.

### COUNT VIII – Motor Vehicle Installment Sales Contract Act (Car Source)

116. Ms. Tyson the preceding allegations by reference.

117. This claim is brought under the Michigan Motor Installment Sales Contract Act, M.C.L. § 566.301 *et seq*, which will be referred to as the MVISCA throughout the remainder of this complaint.

118. Car Source failed to properly complete all necessary terms of the installment contract as required by M.C.L. § 566.302 *et seq*. namely, the conditional nature of the transaction and the requirement that Ms. Tyson pay an additional $1,500 to keep the vehicle.

119. Ms. Tyson suffered damages as a result of this violation of the MVISCA.

### COUNT IX – Breach of Contract (Car Source)

120. Ms. Tyson the preceding allegations by reference.

121. Car Source's tender of the performance did not conform due to its repudiation of the contract.

122. Ms. Tyson suffered damages as a result of this breach of contract.

### COUNT X – Breach of Warranty of Title (Car Source)

123. Ms. Tyson the preceding allegations by reference.

124. Car Source has breached its warranty of title by retaking the vehicle.

125.  Ms. Tyson suffered damages as a result of these breaches of warranty.

## JURY DEMAND

126.  Setara Tyson a jury trial in this case.

## REQUEST FOR RELIEF

127.  Ms. Tyson Requests that this Honorable Court grant the following relief:

   a.  *Assume jurisdiction over this case including all supplemental claims.*

   b.  *Actual damages for items including emotional distress, mental aguish, frustration, humiliation, and embarrassment.*

   c.  *Award statutory damages.*

   d.  *Award statutory costs and attorney fees.*

                        Respectfully Submitted,

                        LYNGKLIP & ASSOCIATES
                        CONSUMER LAW CENTER, PLC

                        By:   S/ Ian B. Lyngklip
                        Ian B. Lyngklip (P47173)
                        Attorney For Setara Tyson
                        24500 Northwestern Highway, Ste. 206
                        Southfield, MI 48075
                        (248) 208-8864
                        Ian@MichiganConsumerLaw.Com

Dated: August 14, 2013