UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SeTara Tyson,

            Plaintiff,     Case No. 13-cv-13490
                                    Hon. Judith E. Levy
v.                                   Mag. Judge Mona K. Majzoub

Sterling Rental, d/b/a Car Source,
*et al.*,

            Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [44]**

This is a consumer credit case. Pending is plaintiff's motion for partial summary judgment. (Dkt. 44.)

I.    Background

On January 22, 2015, plaintiff filed a motion for partial summary judgment on three claims: (1) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(1), by virtue of defendants' failure to provide her an adverse action notice; (2) violation of the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. § 492.101 *et seq*.; and (3)

violation of the Michigan Credit Reform Act ("MCRA"), M.C.L. § 445.1851 *et seq.*

On August 10, 2013, defendant Car Source sold plaintiff a 2006 Chevrolet Cobalt. In the course of the sale, Car Source took a $1,248 down payment from plaintiff. The payment consisted of a $1,200 check from the Family Independence Agency, and $48 of plaintiff's money. Car Source also created a retail installment contract so that plaintiff could finance the remaining balance owed on the car. (Dkt. 44-9.) Car Source, listed as "Creditor-Seller," then assigned the contract to Credit Acceptance Corporation ("CAC"), at which point CAC served as the creditor. However, Car Source fully controlled the terms of the contract, including down payment, interest rate, and the monthly payment owed. (Dkt. 44-12 at 2.)

On August 12, 2013, Car Source requested that plaintiff return to its premises. When plaintiff did, Car Source gave her an invoice stating that she owed it another $1,500 down payment. The additional down payment was not referenced or included in the original contract. Car Source informed plaintiff that she must either pay the additional money

or face legal action. Plaintiff did not have the money, and Car Source revoked the contract and kept the car.

Car Source did not issue an adverse action notice stating the reasons for its decision to revoke its extension of credit to plaintiff. As a matter of course, Car Source never issues adverse action notices. (Dkt. 44-2 at 87-88.) Car Source's proffered rationale for the revocation of plaintiff's contract was that plaintiff submitted fraudulent information to it in the course of the application process – namely, that her pay was significantly higher than it actually was. In the past, when faced with this situation, Car Source would usually either lower payments or charge a higher interest rate to the buyer. (Id.)

II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the

3

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir.2002)).

III. Analysis

Plaintiff seeks summary judgment on three counts: (1) violation of the ECOA, 15 U.S.C. § 1691(d)(1), because of defendants' failure to provide an adverse action notice; (2) violation of the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. § 492.101 *et seq*.; and (3) violation of the Michigan Credit Reform Act ("MCRA"), M.C.L. § 445.1851 *et seq*.

A. Failure to Provide an Adverse Action Notice As Required by the Equal Credit Opportunity Act

Under ECOA, 15 U.S.C. § 1691(d)(2)-(3), a "creditor" is required to provide an adverse action notice in writing stating its specific reasons for the action taken. An adverse action "means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The Act defines a creditor as "any person who regularly extends, renews, or continues credit; any

person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).

Courts determining whether a car dealership is a "creditor" for the purposes of ECOA have followed the analytic framework outlined in *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004). *See, e.g.*, *Gillom v. Ralph Thayer Auto. Livonia, Inc.*, 444 F. Supp. 2d 763 (E.D. Mich. 2006); *Fultz v. Lasco Ford, Inc.*, Case No. 06-cv-11687, 2007 WL 3379684 (E.D. Mich. Nov. 13, 2007).

The *Treadway* court treated the definition of creditor under the adverse action section of ECOA as one falling on a continuum, where, "[a]t some point along the continuum, a party becomes a creditor for the purposes of the notification requirements of the act." *Treadway*, 362 F.3d at 980 (citing *Bayard v. Behlmann Auto. Servs., Inc.*, 292 F. Supp. 2d 1181, 1186 (E.D. Mo. 2003). A dealership that refers an applicant to a separate lender is a "creditor" under ECOA only for the purposes of actions for discrimination and discouragement under 12 C.F.R. §

5

202.4(a) and (b). *Treadway*, 362 F.3d at 979 (internal citations omitted).

Courts are to look at the full range of activities a dealership engages in to determine whether the dealer participates in or makes the decision to extend credit. *Id.* at 980. Courts may also look at whether the dealership "participates in the credit decision by restructuring the terms of the sale in order to meet the concerns of the creditor." *Id.* Such actions might include insisting on more money for a down payment, requiring a cosigner, or lowering the price of the car in order to lower the loan-to-value ratio. *Id.* Courts may also look at whether the dealership "regularly set(s) the annual percentage rate (APR) associated with the sale." *Id.* This list of factors is not exhaustive, but meeting them (among others) leads to the conclusion that a dealership is a creditor for the purposes of ECOA's notice requirements. *Id.* at 980-81.

Defendants rely entirely on *Fultz* for their argument that summary judgment is not warranted. In *Fultz*, a car dealership was found not to be a creditor under the *Treadway* analysis because the plaintiff failed to show that the dealership met "[t]he first and key

6

factor . . . whether the dealership regularly decides not to send credit applications to any lender without notice[.]" *Fultz*, 2007 WL 3379684, at *4. The *Fultz* court, however, did not look at the full range of activities in which the dealership participated beyond the decision not to send credit applications, presumably because the plaintiff did not raise a question of fact as to the dealership's full range of activities in that case.

Here, Car Source sets every material term of its financing agreements, including the down payment owed, the interest rate or APR, and the monthly payment owed. (Dkt. 44-12 at 2.) The only role CAC plays is servicing the installment contracts Car Source negotiates. (Id. at 3.) Further, Car Source routinely restructures deals, including changing the monthly payment owed, changing the APR on its contracts, and, in this case, requesting an additional down payment. The *Treadway* court explicitly described the "full range of activities" as a "continuum" on which the accumulation of certain factors would at

7

some point make a dealership a creditor under ECOA. *Treadway*, 362 F.3d at 980-81.[1]

The *Treadway* court held that a unilateral decision *not* to send a credit application to a lender was, alone, likely enough to make a car dealership a creditor for the purposes of ECOA's notice requirements. *Id.* However, it also assessed a variety of other factors that also demonstrated the dealership was a creditor for the purposes of ECOA's notice requirements. *Id.* Here, Car Source controls every single element of the extension of credit, and may change the terms of the credit agreement at will. The only thing Car Source does not do is service the financing agreements it designs, because it assigns the agreements to servicers such as CAC.

The relevant inquiry under *Treadway* is whether the dealership either participates in the decision or actually makes the decision to

---

[1] The only evidence defendants offer that contradicts these facts is the affidavit of Rami Kamil, who was designated by Car Source for deposition pursuant to a Fed. R. Civ. P. 30(b)(6) notice. (Dkt. 50-1 at 18-19.) In that affidavit, Kamil states that "Car Source never finances automobiles." (Id. at 18.) That single statement alone cannot create a genuine issue of material fact when the alleged financier, CAC, stated at deposition that Car Source determined every material element of the financing agreement. Kamil's statement does not contradict the CAC representative's testimony concerning the actual role Car Source plays in structuring financing agreements with customers.

extend credit. Car Source, at the very least, participates in the decision to extend credit, because it determines the entirety of the credit offer and restructures extensions of credit as it sees fit. Accordingly, Car Source is a creditor for the purposes of ECOA's notice requirements.

Car Source is required to issue an adverse action notice when it engages in "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(2)-(3), (6). Here, Car Source revoked an offer of credit after attempting to change the terms of an existing credit arrangement. Both acts constitute adverse actions under ECOA.

Car Source admits that it never issues adverse action notices pursuant to 15 U.S.C. § 1691(d)(2)-(3), and did not do so in this circumstance. (Dkt. 44-2 at 87-88.) It is beyond question that Car Source violated ECOA's adverse action notice requirements.

As a result of this violation, plaintiff is entitled to actual and punitive damages. 12 C.F.R. § 1002.16(b)(1). Plaintiff's actual damages, as pled in her motion, are $1,248. The Court may also impose punitive damages of up to $10,000 in an individual action. Id. The

Court imposes $10,000 in punitive damages, both because of Car Source's flagrant violation of ECOA's notice requirements and because of Car Source's wholesale abdication of its obligations under ECOA. Plaintiff is also entitled to costs and reasonable attorney fees. Id.

Plaintiff also seeks an injunction against Car Source that would prohibit Car Source from neglecting its duties under ECOA in the future. However, ECOA only permits injunctive relief in the case of a civil action brought by the Attorney General of the United States. 12 C.F.R. § 1002.16(b)(4).

B. Violation of the Motor Vehicle Sales Finance Act

The MVSFA requires that in the course of sale of an automobile, "[a]n installment sale contract shall be in writing, and shall contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold, and shall be signed by both the buyer and the seller." M.C.L. § 492.112(a). The contract must also contain "specific provisions concerning the buyer's liability for default charges, repossession, and sale of the motor vehicle in case of default or other breach of contract, and the seller's or holder's rights concerning any collateral security." M.C.L. § 492.113(5). Further, "[a] licensee

10

under this act shall not charge, contract for, collect, or receive from the buyer, directly or indirectly, any further or other amount for costs, charges, examination, appraisal, service, brokerage, commission, expense, interest, discount, fees, fines, penalties, or other thing of value in connection with the retail sale of a motor vehicle under an installment sale contract in excess of the cost of insurance premiums, other costs, the finance charges, refinance charges, default charges, recording and satisfaction fees, court costs, attorney's fees, and expenses of retaking, repairing, and storing a repossessed motor vehicle which are authorized by this act." M.C.L. § 492.131(a).

Plaintiff contends that the additional $1,500 Car Source requested constituted a prohibited charge under the MVSFA. The additional down payment was contained nowhere in the contract, and the only written evidence of any obligation to make an extra down payment was a single invoice generated two days after the sale of the car, on August 12, 2013. (Dkt. 44-10.) Accordingly, the $1,500 was a prohibited charge under sections 113 and 131 of the MVSFA.

In the case of a prohibited charge under the MVSFA, "all the costs and charges in connection with the contract, other than insurance, shall

11

be void and unenforceable and any amounts paid by the buyer for such costs and charges, other than insurance, shall be applied on the principal of the contract." M.C.L. § 492.131(d). It appears that, despite this violation, plaintiff does not seek the MVSFA's civil remedy, but instead a remedy under the MCRA for the MVSFA violation. (Dkt. 44 at 21.)

The MCRA prohibits the imposition of any "excessive fee or charge" by any "regulated lender" in Michigan. M.C.L. § 445.1856(4). An "excessive fee or charge" "means a fee or charge that exceeds the amount allowed in . . . any other applicable law or statute of this state." M.C.L. § 445.1852(f). A "regulated lender" includes "a licensee under . . . the motor vehicle sales finance act." M.C.L. § 445.1852(i).

It is clear that Car Source imposed an "excessive fee" under the MVSFA, as the $1,500 it sought as an additional deposit was not permitted under the MVSFA. Based on this violation, plaintiff asks for "the remedy allowed for by the MCRA for the imposition of these charges."

The MCRA permits a variety of remedies for violation of the statute. *See* M.C.L. § 445.1861. Plaintiff may obtain a declaratory

12

judgment, enjoin a regulated lender from engaging in a method, act, or practice that is a violation of the MCRA, recover $1,000.00 and actual damages under a non-credit card arrangement, and recover reasonable attorney fees and costs. M.C.L. § 445.1861(1)(a)-(d). The regulated lender is also barred from recovering any interest or other charges in connection with the extension of credit during which the violation occurred. M.C.L. § 445.1861(2).

The Court, pursuant to the MCRA, awards plaintiff $1,000 in statutory damages and no actual damages (as plaintiff has already recovered those under her ECOA claim), along with reasonable attorney fees and costs. The Court also enjoins Car Source from imposing additional down payment requirements not specifically disclosed in its retail installment contracts, or any other contract serving a similar or identical function as a retail installment contract, entered into with any buyer of any vehicle. Car Source is further enjoined from imposing any other additional fine, penalty, or charge in connection with a retail installment contract unless that fine, penalty, or charge is specifically disclosed in writing at the time of sale in accordance with the MVSFA and MCRA.

Finally, Car Source is prohibited from recovering any interest or other charges in connection with its extension of credit to plaintiff for the purchase of the 2006 Chevrolet Cobalt at issue in this case.

IV. Conclusion

For the reasons set forth above, it is hereby ordered that:

Plaintiff's motion for partial summary judgment (Dkt. 44) is GRANTED;

Defendant is ORDERED to pay $11,000 in statutory damages and $1,248 in actual damages for its violations of ECOA and the MCRA, as well as reasonable attorney fees and costs related to those claims; and

Defendant is ENJOINED from violating the MCRA and PROHIBITED from recovering interest or other charges in relation to the sale of the 2006 Chevrolet Cobalt at issue in this case, subject to the terms stated in this opinion and order.

IT IS SO ORDERED.

Dated: March 18, 2015　　　　　　　s/Judith E. Levy  
Ann Arbor, Michigan　　　　　　　JUDITH E. LEVY  
　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 18, 2015.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager
