## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SeTara Tyson,

                    Plaintiff,          Case No. 13-cv-13490

v.                                      Judith E. Levy
                                        United States District Judge
Sterling Rental, Inc., Al Chami,
and Rami Kamil,                         Mag. Judge Mona K. Majzoub

                    Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT [105]

Under Michigan law, a person or entity may be held liable for statutory conversion when he or she has damaged another by "converting property to [his or her] own use."  MICH. COMP. LAWS § 600.2919a(1)(a). Defendants Sterling Rental, Al Chami, and Rami Kamil first sold a car to plaintiff SeTara Tyson, then two days later asked her to return to the dealership with the car.  She did, at which point defendants demanded that she pay $1,500 extra to keep the car.  The parties dispute whether she was also given the option to leave the car at the dealership, void the contract, and get the money she had already paid back, or leave the lot

with the car and be sued for fraud.  Ultimately, plaintiff left the car with defendants, opting for none of these.[1]

For the reasons set forth below, plaintiff's motion for partial summary judgment on her claim of statutory conversion (Dkt. 105) is denied.

## I.     Factual Background

The relevant factual background has been set forth previously by the Court (Dkt. 55 at 1-3) and by the United States Court of Appeals for the Sixth Circuit.  *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 574-75 (6th Cir. 2016).  The Court previously granted defendants summary judgment on plaintiff's statutory conversion claim, holding that it was barred by the economic loss doctrine and rejecting plaintiff's argument that statutory conversion was not covered by the doctrine because it was an "independent claim."  (Dkt. 43 at 16.)  The basis for the application of the economic loss doctrine was plaintiff's own description of her conversion claims as occurring "in derogation of the contract of sale,"

---

[1] Throughout this litigation, the parties have alternatively referred to "Car Source" and "Sterling Rental" as the same entity.  The Court will refer to it as "Sterling Rental."

coupled with the fact that conversion claims do not exist separately from the economic loss doctrine.  (Dkt. 48 at 10.)

The Sixth Circuit reversed, holding that although the economic loss doctrine could bar a statutory conversion claim, it did not apply here. *Tyson*, 836 F.3d at 583.  That court held that her statutory conversion claim could not be "based on Defendants' violation of a duty arising under the contract of sale." *Id.*  This was so because "Defendants' contractual duties regarding title, possession, and delivery had effectively terminated by the time Plaintiff returned to Car Source on August 12, 2013." *Id.*

Defendants argue that there is a discrepancy between the Court's March 18, 2015 summary judgment opinion and the Sixth Circuit's opinion as to the issue of whether Sterling Rental "kept" the car (Dkt. 55 at 3) or plaintiff "left" the car at the lot.  *Tyson*, 836 F.3d at 575.  The difference between "kept" and "left," according to defendants, is meaningful, because the former word is "inconsistent with the ownership or property rights of Ms. Tyson," while the latter is not.  (Dkt. 55 at 3.)

"Kept," as the past tense and past participle of "keep," means "to restrain from departure or removal," or "to retain in one's possession or power." *Keep*, Merriam-Webster.com,   https://www.merriam-

webster.com/dictionary/keep (last visited April 4, 2017). "Left," as the past tense and past participle of "leave," means "to cause or allow to be or remain in a specified condition" or "to permit to be or remain subject to another's action or control." *Leave*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/leave (last visited April 4, 2017). Neither word is inconsistent with the other, in the context of the facts of this case.

For the purposes of this opinion, and based on the uncontested facts of this case, the Court will adopt the Sixth Circuit's description as follows:

> It is undisputed, however, that Plaintiff drove her car back to Car Source on August 12, 2013—two days after the sale—in response to a phone call from Kamil. When Plaintiff arrived at the dealership, a Car Source employee told her that the RIC would need to be modified. It seems that during those two intervening days, CAC informed Car Source that it would not be paying an advance on the financing agreement due to the discrepancy in Plaintiff's monthly income. Plaintiff was given an invoice stating that under her new financing agreement, she would need to put an additional $1,500 towards a down payment. Plaintiff declined to sign the new agreement and ultimately left the Cobalt with Car Source.

*Tyson*, 836 F.3d at 575.

That description, however, does not address the dispute over what occurred when plaintiff returned to the dealership. Plaintiff states that

4

when she arrived, her car and keys were taken by defendant Al Chami, employees of defendant began "yelling and swearing" at her and her family, her belongings were removed from her car, and that if she wanted her car, she was required to bring back the contract of sale and $1,500. (Dkt. 41-2 at 2-3.)   Defendants, based on Rami Kamil's deposition testimony, argue that plaintiff was given two additional options: leaving the car at the dealership, voiding the contract, and getting the money she had already paid back, or leaving with the car under the threat of being sued for fraud.  (Dkt. 44-2 at 85-86.)  Defendants also contend that she was free to leave the dealership with her car at any time.  (*Id.*)

Following remand from the Sixth Circuit, on December 5, 2016, plaintiff filed a motion for partial summary judgment on her statutory conversion claims.  (Dkt. 105.)  A hearing was held on the motion on March 21, 2017.  At the hearing, plaintiff's counsel specified that the motion only concerned the statutory conversion claims asserted against Sterling Rental and Rami Kamil.

## II.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

### III.   Analysis

Statutory conversion is defined in relevant part as "[a]nother person's stealing or embezzling property or converting property to the other person's own use." MICH. COMP. LAWS § 600.2919a(1)(a). "Converting" under that statute refers to common-law conversion, defined as "any distinct act of dominion wrongfully exerted over another's personal property." *Trail Clinic, P.C. v. Bloch*, 114 Mich. App. 700, 705 (1982). The act of dominion must be "in denial of or inconsistent with [the owner's] rights therein." *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 352 (2015) (citing *Nelson & Witt, Inc. v. Texas Co.*, 256 Mich. 65, 70 (1931) (further citation omitted)). In short,

the difference between statutory conversion and common-law conversion is that the former has an additional requirement that the conversion be for the converter's own use. *Aroma Wines*, 497 Mich. at 354.

Plaintiff argues that Sterling Rental converted her property by employing it in an extortion scheme: once she had returned the car to the lot, she was given a choice of paying defendants an additional $1,500 or being sued for fraud if she left the lot with the car. (Dkt. 105 at 11.) In his deposition, Rami Kamil stated that on the day plaintiff returned to the lot, she had the following options: first, to pay Sterling Rental an additional $1,500; second, to "be sued and get to take the car;" and third, "she gets her money back." (Dkt. 44-2 at 85-86.) Kamil also admitted that plaintiff "is the titled owner of the vehicle, so she still owns that vehicle." (*Id.* at 83.)[2]

Sterling Rental presents three arguments in response. First, it argues that because plaintiff "left" the car at Sterling Rental, it could not "convert property abandoned by the owner." (Dkt. 108 at 10.) Second, it argues that it did not employ the property to its own use. (*Id.* at 11.)

---

[2] Although Kamil indicated at his deposition that plaintiff could have received the money she paid for the car back, the record, as well as defendants' arguments during the course of the litigation, does not bear out this contention.

Third, it argues that the issue of its conversion is a question of fact for the jury. (*Id*. at 12.)

### 1. Property "Abandoned" By The Owner

Under Michigan law, "a demand for return of the property is not necessary if a conversion has occurred." *Trail Clinic*, 114 Mich. App. at 706 (citing *Gum v. Fitzgerald*, 80 Mich. App. 234 (1978)). Sterling Rental does not dispute that it asked plaintiff to return to its lot two days after purchasing the car. It also does not dispute that when plaintiff returned to the lot, she "was given an invoice stating that under her new financing agreement, she would need to put an additional $1,500 towards a down payment." *Tyson*, 836 F.3d at 575.

In short, when plaintiff returned to the lot on August 12, 2013, Sterling Rental informed her that the car – her personal property, by Sterling Rental's own admission – was not hers unless she fulfilled one of a set of conditions. Even in the light most favorable to defendants, Sterling Rental's demands could have constituted an act of dominion over what it admits is plaintiff's personal property. It asked plaintiff to return to the lot with her car. When she arrived, Sterling Rental told her that she was not free to leave the lot unless she fulfilled one of three

8

conditions.   Each of those three conditions was inconsistent with her undisputed ownership of the vehicle: she would either have to pay Sterling Rental more money to leave the lot with the car she owned, face a fraud lawsuit claiming that she did not legally obtain the car she owned, or she could get a refund of the money she had already paid and disclaim all ownership of the vehicle.

Plaintiff was under no obligation to demand or accept the return of the car under Michigan law to sustain her conversion claim.   Sterling Rental's argument would allow any converter to escape consequences for its attempted actions by returning (or attempting to return) the property to its rightful owner after the conversion occurred.

## 2. Whether The Alleged Conversion Was For Defendants' "Own Use"

Statutory conversion requires that the converted property be for the defendant's own use, defined as a purpose "personal to the defendant's interests." *Aroma Wines*, 497 Mich. at 359.   Sterling Rental argues that it did not employ the car for such a purpose because it did not receive payments, it could not and did not sell the car or salvage it for parts, and it did not drive the car.   The Supreme Court of Michigan has rejected this narrow and utilitarian reading of the "own use" doctrine. *Id*. at 358 ("[I]t

9

becomes clear that the Legislature did not seek to restrict the application of MCL 600.2919a(1)(a) on the basis of the intended or common purpose of the converted property."). These arguments are an effort to distract from what Sterling Rental did do, which was, in the light most favorable to it, call plaintiff back to the lot and demand either additional money under threat of legal action or a termination of the contract establishing her ownership of the car.

Sterling Rental argues that it did not use the car "as leverage to extort money from Ms. Tyson as she hired an attorney and filed suit in Federal court just two days after she left the car at the Car Source lot." (Dkt. 108 at 11.) Sterling Rental's demands are not wiped away because plaintiff sought legal representation to prevent the consequences of those demands from occurring. Statutory conversion is actionable even when the converter does not achieve the aims of the conversion.

By its own admissions, Sterling Rental induced plaintiff to come to its premises with her property, then told her that she could not have her property back unless she gave them more money. If she left the premises with her property, she would be sued for fraud. Her other option, according to Kamil, was to surrender her property in exchange for money.

10

Whatever option plaintiff chose, Sterling Rental was using her property as leverage to ensure a more favorable outcome for itself, either by getting an additional $1,500 for a car it admits plaintiff already owned, having her commit an act that would be an ostensible predicate for a fraud lawsuit, or getting the car back to void a deal it no longer wanted any part of.

Sterling Rental also argues that its threat to sue was "not unlawful" or a "crime." (*Id.*)  Conversion does not require that the acts taken or threatened with the converted property themselves also be illegal.  It requires only that the acts be in denial of or inconsistent with the owner's rights.  *See, e.g., Gum,* 80 Mich. App. at 238 (finding that conversion occurred when a landlord changed the locks on rental units).

### 3. Whether A Genuine Issue Of Material Fact Exists

Defendants' arguments regarding whether a genuine issue of material fact exists are largely unavailing.  They rely almost entirely on the procedural posture of *Aroma Wines,* which concerned the grant of a directed verdict to a defendant during a jury trial, to argue that statutory conversion claims must go to a jury.  *Aroma Wines*, 497 Mich. at 343. The Michigan Supreme Court determined that, contrary to the trial

11

court's holding, a jury could, under the facts presented, find that the defendant committed statutory conversion. *Id*. at 360.

The Michigan Supreme Court did not state that all claims of statutory conversion create genuine issues of material fact for a jury. Instead, that Court determined that a motion for directed verdict *during a jury trial* was improperly granted in that case, and ordered that the issue should go to the jury.  If the claim reached the jury, it is because it passed the summary disposition stage of Michigan state court litigation, and a triable issue of fact existed, just as in federal court.  *See* Mich. Ct. R. 2.116(C); *see also Rayfield v. Am. Reliable Ins. Co.*, 641 F. App'x 533, 539 (6th Cir. 2016) (Stranch, J., concurring) ("The Michigan summary disposition standard tracks the federal summary judgment standard.").

Here, the Court's role is to determine whether a genuine issue of material fact exists that may be submitted to a jury.  The issue in this case is whether a conversion actually occurred.  The Michigan Supreme Court recently analyzed the nature of conversion claims in detail, noting the variety of ways something may be converted:

A conversion may be committed by

(a) intentionally dispossessing another of a chattel,

(b) intentionally destroying or altering a chattel in the actor's possession,

(c) using a chattel in the actor's possession without authority so to use it,

(d) receiving a chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire for himself or for another a proprietary interest in it,

(e) disposing of a chattel by sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it,

(f) misdelivering a chattel, or

(g) refusing to surrender a chattel on demand.

*Aroma Wines*, 497 Mich. at 352 (citing *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438 (1960)).

This list is not exhaustive, but instead attempts to "encompass many different ways in which property may be converted, beyond the original meaning of finding lost property and converting that property to the converter's own use." *Aroma Wines*, 497 Mich. at 352. Conversion now "broadly encompasse[s] any conduct inconsistent with the owner's property rights." *Id*. at 353.

Plaintiff's version of her return to the dealership involves defendants taking her car keys and telling her that she had only one option: pay $1,500 extra or lose her car. Because she refused to do so, defendants removed her belongings from her car and drove her home.

13

Defendants state that plaintiff had two additional options, including the option to leave with her car at any time, albeit under the threat of an apparently frivolous fraud lawsuit.  At oral argument, defense counsel also indicated that defendants did not know whether anyone took plaintiff's keys when she returned to the dealership.

If plaintiff had returned to the dealership, surrendered her keys, and then been told only that she could not have her car unless she paid $1,500, defendants would have unquestionably committed statutory conversion.  If she had been offered the additional option of surrendering the car she owned in exchange for her money back, the same conclusion would hold.  But there are material factual disputes that preclude the Court from arriving at this conclusion.

Under defendants' version of the facts, plaintiff may have been able to leave the dealership with her car at any time.  The offer to leave the lot with the car and be sued for fraud, although supported by the assumption that plaintiff did not lawfully gain ownership of the car, could be found by a jury not to be an act of dominion.  In the light most favorable to defendants, plaintiff was able to leave the dealership at any time with her property and face suit later, maintaining unbroken possession of the

14

car.  Michigan requires "something more than the use of words" for an act to constitute conversion.  *Guarantee Bond & Mortg. Co. v. Hilding*, 246 Mich. 334, 343-44 (1929).  In this scenario, plaintiff would have faced nothing more than threats of legal action, rather than any overt act constituting conversion.

Plaintiff's ability to leave at any time also hinges on whether defendants actually had possession of plaintiff's keys.  Even assuming plaintiff was faced with three options, including leaving with the car and being sued, it would still be possible for defendants to have converted her car, however briefly, if they had possession of the vehicle and the keys required to use it.  If defendants had possession of the keys and did not relinquish them before plaintiff and her family were driven home, then the offer to leave with the car could be considered illusory in the face of clear intent to convert her car.

However, plaintiff has presented only her affidavit as evidence that defendants had possession of her keys.  At deposition, Kamil was not asked about who had possession of the keys when plaintiff was at the dealership.  Plaintiff, in the course of this litigation, has presented no other testimony or evidence that defendants had possession of her keys

15

during her return to the dealership.  Notably, she has also presented no evidence regarding if or when the keys were returned to her.  Defendants do not address whether they took the keys while plaintiff was at the dealership, but have consistently maintained that plaintiff was free to leave the dealership with her car at any time.  By implication, under their version of the facts, plaintiff would necessarily have had the keys in her possession in order to drive the car away.  This creates a genuine issue of material fact as to whether defendants ever took possession of her keys and therefore had some form of dominion over her car.

Because genuine issues of material fact exist regarding whether Sterling Rental and Rami Kamil converted plaintiff's car, summary judgment must be denied.

## IV.   Conclusion

For the reasons set forth above, it is hereby ordered that:

Plaintiff's motion for partial summary judgment (Dkt. 105) is DENIED.

The Court will issue an order setting all remaining dates in this case.

16

IT IS SO ORDERED.

Dated: April 10, 2017               s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                                     United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 10, 2017.

                                 s/Felicia M. Moses
                                 FELICIA M. MOSES
                                 Case Manager