UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SETARA TYSON,

              Plaintiff,              CIVIL ACTION NO. 13-cv-13490

      v.                    DISTRICT JUDGE JUDITH E. LEVY

STERLING RENTAL, INC., d/b/a/     MAGISTRATE JUDGE MONA K. MAJZOUB
CAR SOURCE, AL CHAMI, and
RAMI KAMIL,

              Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Setara Tyson's Motion for Attorney's Fees. (Docket no. 124.) Defendants Sterling Rental, Inc., doing business as Car Source, Al Chami, and Rami Kamil responded to Plaintiff's Motion, and Plaintiff replied to Defendants' Response. (Docket nos. 128, 131.) Plaintiff has also filed supplemental information in support of her Motion for Attorney's Fees, to which Defendants have responded. (Docket nos. 135, 136.) Also before the Court is Plaintiff's Motion for Status Conference regarding her Motion for Attorney's Fees, to which Defendants have also responded.[1] (Docket nos. 137, 138.) The Motions have been referred to the undersigned for consideration. (Docket nos. 129, 139.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] This Motion is titled "Joint Motion for Status Conference;" however, it is clear from Plaintiff's counsel's certified inability to obtain concurrence from opposing counsel in the relief requested as well as Defendants' Response to the Motion that this is not a joint motion.

## I.      RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Attorney's Fees (docket no. 124) be **GRANTED IN PART** and **DENIED IN PART** and that Plaintiff be awarded $138,206.85 in attorney's fees and $2,637.82 in costs, for a total award of $140,844.67, as provided herein.   In light of this recommendation, it is further recommended that Plaintiff's Motion for Status Conference (docket no. 137) be **DENIED** as moot.

## II.     REPORT

### A.      Factual Background

The Sixth Circuit Court of Appeals set forth the factual history of this matter in a September 2, 2016 opinion, an abbreviated portion of which is reproduced here:

> On August 10, 2013, Plaintiff purchased a used 2006 Chevrolet Cobalt from Car Source for $8,525.00. Plaintiff could not afford to pay that price outright, but she was able to put $1,248 towards a down payment with the help of a grant from the state of Michigan. Defendants told Plaintiff that she had been approved for financing of the remainder of the vehicle's purchase price. To aid in the preparation of a financing agreement, Plaintiff provided Car Source salesman Rami Kamil with copies of her two most recent pay stubs, as well as a recent bank statement.  With these documents in hand, Kamil entered Plaintiff's financial information— including the date she began working at her job, her year-to-date earnings, and the fact that she received paychecks every two weeks—into a computer program called "CAPS" provided to Car Source by non-party Credit Acceptance Corporation ("CAC"). . . .

> . . . .

> . . . After the paperwork had been signed, Plaintiff received the keys to the car and a receipt; she left the dealership in her new car that day.

> The precise circumstances surrounding what happened next are disputed by the parties. It is undisputed, however, that Plaintiff drove her car back to Car Source on August 12, 2013—two days after the sale—in response to a phone call from Kamil. When Plaintiff arrived at the dealership, a Car Source employee told her that the RIC [Retail Installment Contract] would need to be modified. It seems that during those two intervening days, CAC informed Car Source that it would not be paying an advance on the financing agreement due to [a] discrepancy in Plaintiff's monthly income. Plaintiff was given an invoice stating that under her new financing

agreement, she would need to put an additional $1,500 towards a down payment. Plaintiff declined to sign the new agreement and ultimately left the Cobalt with Car Source.

Plaintiff paints a more troubling picture of that day's events. She asserts that she returned to Car Source on August 12, 2013, after Kamil called and told her that her car required a new GPS unit, and that without the unit her car might shut off without warning. She was also informed that Car Source had a new contract for her to sign, under which she would make lower monthly payments. Plaintiff testified that she traveled to the dealership and parked outside; she entered the showroom and gave her keys to a Car Source employee. At that point, she was asked to produce her copy of the RIC. When Plaintiff responded that she had not brought her copy, the employee began "yelling and swearing" at her. Plaintiff states that a porter then retrieved the personal belongings in the Cobalt and "dumped them" at her feet. According to Plaintiff, she was told that if she wanted her car back, she would have to make an additional payment of $1,500.

*Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 574-75 (6th Cir. 2016).

### B.    Procedural History

Plaintiff initiated this action against Defendants on August 14, 2013.  (Docket no. 1.)  In her Amended Complaint, filed September 9, 2014, Plaintiff alleged violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, *et seq.*, the Michigan Motor Vehicle Sales Finance Act (MVSFA), Mich. Comp. Laws § 492.101, *et seq.*, Article 9 of the Uniform Commercial Code (UCC), M.C.L. § 440.9101, *et seq.*, the Michigan Credit Reform Act (MCRA), M.C.L. § 445.1851, *et seq.*, and the Michigan Motor Vehicle Installment Sales Contracts Act (MVISCA), M.C.L. § 566.301, *et seq.*  Plaintiff also brought claims for common law and statutory conversion, breach of contract, and breach of warranty of title.  (Docket no. 32.)

On January 20, 2015, the court partially granted Defendants' Motion for Summary Judgment and dismissed Plaintiff's common law and statutory conversion claims.  (Docket no. 43.)  On March 18, 2015, the court granted Plaintiff's Motion for Partial Summary Judgment on her ECOA, MVSFA, and MCRA claims and ordered Defendant Car Source to pay $11,000.00 in

statutory damages and $1,248.00 in actual damages for its violations of the ECOA and the MCRA, as well as reasonable attorney fees and costs related to those claims; the court denied Plaintiff's request for injunctive relief on her ECOA claim.  (Docket no. 55.)  The parties resolved Plaintiff's remaining claims via stipulation and the court entered an order to that effect on April 9, 2015. (Docket no. 59.)  Defendants then appealed the court's order granting Plaintiff summary judgment on her ECOA claim, and Plaintiff appealed the court's orders granting Defendants summary judgment on Plaintiff's conversion claims and denying Plaintiff's request for injunctive relief on her ECOA claim.  (Docket nos. 60, 62; *Sterling Rental*, 836 F.3d at 573.)

Plaintiff subsequently filed a Motion for Costs and Attorney's Fees on May 25, 2015. (Docket no. 70.)  The court granted Plaintiff's Motion in part on August 18, 2015, awarding Plaintiff attorney's fees in the amount of $71,633.00 for 241.86 hours of work as a lodestar calculation but reducing that amount by twenty percent, to $57,306.40, based on Plaintiff's lack of success on her conversion claims.  (Docket no. 80.)  Plaintiff and Defendants appealed.  (Docket nos. 84, 88, 90.)

On September 2, 2016, the Sixth Circuit issued two opinions regarding the parties' appeals. The Sixth Circuit affirmed the court's grant of summary judgment to Plaintiff on her ECOA claim, reversed the court's determination that injunctive relief was not available to Plaintiff under the ECOA, reversed the court's grant of summary judgment to Defendants on Plaintiff's statutory conversion claims, and remanded the matter for a determination of whether injunctive relief was warranted on Plaintiff's ECOA claim and for further proceedings on Plaintiff's statutory conversion claims.  *Sterling Rental, supra.*  With regard to attorney's fees, the Sixth Circuit affirmed the court's lodestar calculation but reversed the twenty percent reduction and remanded

for a recalculation of the reduction in light of its holding regarding Plaintiff's conversion claims. *Tyson v. Al Chami*, 659 F. App'x 346 (6th Cir. 2016).

On remand, Plaintiff withdrew her claim for injunctive relief under the ECOA, and the court denied Plaintiff's Partial Motion for Summary Judgment on her claims of statutory conversion. (Docket nos. 111, 112.) Two weeks before trial was set to commence, the parties resolved the statutory conversion claims, for which Defendants agreed to pay Plaintiff damages of $7,000.00, and the parties stipulated to the entry of an order in that regard. (Docket no. 120.) The Stipulated Order provided that Plaintiff could file a petition for attorney's fees within sixty days. This timely-filed Motion for Attorney's Fees followed. (Docket no. 124.)

### C. Law and Analysis

Plaintiff moves for $175,007.17 in attorney's fees and costs. (Docket no. 124.) Specifically, Plaintiff seeks attorney's fees related to four particular segments of this litigation: (1) the appellate attorney's fees incurred in defending the underlying judgment and in reversing the dismissal of her statutory conversion claims; (2) the appellate attorney's fees incurred in defending the initial award of attorney's fees and in reversing the twenty percent reduction in fees; (3) the attorney's fees incurred following remand by the Sixth Circuit; and (4) the attorney's fees for work performed prior to the appeal that were deducted from the initial fee award. (*Id*. at 3.) Plaintiff also breaks the requested fee award down as follows:

| Billing | Hours Expended | Total Amount |
|---|---:|---:|
| Appellate Fees (Deepak Gupta) | 186.58 hours | $96,772.75 |
| Appellate Fees (L&A) | 77.1 hours | $30,777.50 |
| Appellate Fees (Bardo Law) | 15.4 hours | $7,700.00 |
| Fees After Remand (L&A) | 53.4 hours | $22,055.00 |
| Non-Taxable Costs | n/a | $3,375.32 |
| Fees Deducted from Initial Award | n/a | $14,326.60 |
| **Grand Total** | | **$175,007.17** |

(*Id*.)

Defendants' response to Plaintiff's Motion is disorganized and repetitive. (Docket no. 128.) From what this Court can discern, Defendants argue that Plaintiff's attorneys cannot receive any appellate attorney's fees because (1) a district court cannot award attorney's fees incurred in an appellate court; and (2) Plaintiff was not a prevailing party at the appellate level because the Sixth Circuit did not award costs to Plaintiff in its mandate. (*Id.* at 6-7, 16-17, 25-26, 29.) Defendants also argue that Plaintiff's requests for the attorney's fees related to her conversion claims that she incurred pre- and post-appeal should be denied because the court lost subject matter and supplemental jurisdiction over Plaintiff's state-law conversion claims as soon as Plaintiff withdrew her ECOA claim for injunctive relief. Therefore, Defendants argue, the court does not have jurisdiction to resolve Plaintiff's request for attorney's fees related to those claims. (*Id.* at 6, 15, 17-21, 23-25.) Defendants argue that even if the court did have jurisdiction over Plaintiff's conversion claims, an award of attorney's fees related thereto would be inappropriate because Plaintiff is not a prevailing party on those claims, as the claims were resolved by settlement and not by a judgment or consent decree. (*Id.* at 12, 14, 27-29.) Defendants further argue that the court must apply state law in determining the reasonableness of the attorney's fees related to Plaintiff's conversion claims. (*Id.* at 7-9.) With regard to reasonableness, Defendants assert that this appears to be a fee-driven case and that Plaintiff's attorneys are seeking fees disproportionate to the amount of damages received by Plaintiff, in violation of the Billing Judgment Rule. (*Id.* at 12-14.) Notably, however, Defendants do not challenge the amount of attorney's fees and costs sought with any specificity, *i.e.*, with regard to the number of hours expended or the hourly rates charged by the several attorneys and paralegals who worked on this matter.

1.      *Appellate Attorney's Fees*

a.      <u>Plaintiff is Entitled to an Award of Appellate Attorney's Fees</u>

On appeal to the Sixth Circuit, Defendants challenged the court's order granting Plaintiff summary judgment on her ECOA claim, and Plaintiff challenged the court's orders granting Defendants summary judgment on Plaintiff's conversion claims and denying Plaintiff's request for injunctive relief on her ECOA claim.  (Docket nos. 60, 62; *Sterling Rental*, 836 F.3d 571, 573.) The parties also challenged the court's award of attorney's fees.  (Docket nos. 84, 88, 90; *Al Chami*, 659 F. App'x 346.)

The ECOA and Michigan's statutory conversion law provide for the recovery of costs and reasonable attorney's fees incurred by a prevailing plaintiff.  15 U.S.C. § 1691e(d), M.C.L. § 600.2919a(1).  "Where a statute provides for an award of attorney's fees to a prevailing party, 'reasonable appellate fees may [also] be awarded to [the] prevailing part[y].'"  *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 450 (6th Cir. 2009) (quoting *Riley v. Kurtz,* 361 F.3d 906, 915 (6th Cir. 2004)).  Indeed, the attorney's fees provision of the ECOA does not limit the recovery of attorney's fees to those incurred at the trial level.  *See Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1404 (6th Cir. 1995) (approving propriety of appellate attorney's fees where nothing in the applicable statute indicated that the provision did not apply to appellate fees).  And courts have explicitly found that appellate attorney's fees are permitted under Michigan's conversion statute.  *See New Properties, Inc. v. George D. Newpower, Jr., Inc.*, 282 Mich. App. 120, 141, 762 N.W.2d 178, 191 (Mich. Ct. App. 2009) (concluding that M.C.L. § 600.2919a permits the recovery of post-judgment fees related to appeal); *Hunt v. Hadden*, 665 F. App'x 435, 439 (6th Cir. 2016) (remanding the case to the district court to determine the amount of post-judgment litigation fees awardable under M.C.L. § 600.2919a).

Additionally, cases from this circuit and others uniformly hold that a lawyer should receive a fee for preparing and successfully litigating a request for attorney's fees pursuant to a fee-shifting statute. *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986), *abrogated on other grounds by The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016) (citing *In re Nucorp Energy, Inc.,* 764 F.2d 655, 660 (9th Cir. 1985) (collecting cases)). This includes the legal time spent prosecuting and defending appeals of those attorney's fees. *Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir. 1979); *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53-54 (3d Cir. 1978).

Defendants argue that Plaintiff's attorneys cannot receive any appellate attorney's fees because a district court cannot award attorney's fees that were incurred in an appellate court and because the Sixth Circuit did not award costs to Plaintiff in its mandate. (*Id.* at 6-7, 16-17, 25-26, 29.) Both of these arguments are easily disposable, as they directly contradict binding Sixth Circuit precedent.

Defendants rely on the Sixth Circuit's holding in *Buian v. Baughard*, 687 F.2d 859, 862 (6th Cir. 1982), to support their argument that Plaintiff cannot recover appellate attorney's fees without having received costs from the Sixth Circuit. (Docket no. 128 at 26.) In *Buian*, the Sixth Circuit held that a prevailing party could be awarded appellate attorney's fees under 42 U.S.C. § 1988 (another fee-shifting statute) only if the Sixth Circuit awarded costs to that party pursuant to Federal Rule of Appellate Procedure 39(a). *Buian*, 687 F.2d at 862. A few years later, however, the Sixth Circuit explicitly overruled this holding in *Kelley v. Metro. Cty. Bd. of Educ.*, 773 F.2d 677, 681 (6th Cir. 1985), concluding "that an award of costs pursuant to Fed.R.App.P. 39(a) is separate and distinct from and totally unrelated to an award of attorney's fees pursuant to the directions of § 1988." *Kelley*, 773 F.2d at 681 (footnote omitted), *disapproved of on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

The *Kelley* court further provided that the relevant inquiry in determining attorney's fees for appellate work is simply whether the party seeking compensation substantially prevailed at the appellate level. *Kelley*, 773 F.2d at 682; *accord Wehr v. Ryan's Family Steak Houses, Inc.*, 99 F.3d 1140 (Table), 1996 WL 585892, at *4 (6th Cir. 1996). And contrary to Defendants' other argument, "[c]onsideration and disposition of this critical issue is pragmatically left to the forum of the trial court." *Kelley*, 773 F.2d at 682 (citations omitted); *see also Smith v. Detroit Bd. of Educ.*, 728 F.2d 359, 360 (6th Cir. 1984); *O'Bryan v. Saginaw Cty., Mich.*, 722 F.2d 313, 314 (6th Cir. 1983) ("[T]his Court has ruled that issues concerning the award of attorney's fees for the prosecution of an appeal address themselves in the first instance to the District Court."). Defendants' arguments against an award of appellate attorney's fees are therefore unavailing under *Kelley*.

Here, as previously noted, the Sixth Circuit affirmed the district court's grant of summary judgment to Plaintiff on her ECOA claim; reversed the district court's determination that injunctive relief was not available to Plaintiff under the ECOA; reversed the district court's grant of summary judgment to Defendants on Plaintiff's statutory conversion claims; affirmed the district court's lodestar calculation, the propriety of which was appealed by Defendants; and reversed the district court's twenty-percent reduction in the attorney's fee award, in favor of Plaintiff. *Sterling Rental*, 836 F.3d at 574-75; *Al Chami*, 659 F. App'x 346. Thus, Plaintiff substantially prevailed in prosecuting and defending the appeals of the district court's orders on the merits of Plaintiff's claims and the award of attorney's fees. Plaintiff is therefore entitled to an award of appellate attorney's fees.

b.      The Reasonable Amount of Appellate Attorney's Fees

Plaintiff seeks appellate attorney's fees for legal services rendered by three different law firms, as follows:  (1) $96,772.75.00 for 186.58 hours of work performed by attorneys and a paralegal at Gupta Wessler PLLC, a self-described national appellate and complex-litigation boutique in Washington D.C., which Plaintiff's lead counsel, Ian Lyngklip, hired to prosecute and defend the substantive appeals of Plaintiff's claims; (2) $30,777.50 for 77.1 hours of work performed by attorneys and a paralegal at Plaintiff's primary law firm, Lyngklip & Associates, Consumer Law Center, PLC, related to the appeals of Plaintiff's claims and the award of attorney's fees; and (3) $7,700.00 for 15.4 hours of work performed by Attorney Stacy M. Bardo of Bardo Law, P.C., whom Plaintiff's lead counsel hired to perform an independent review and provide assistance regarding the appellate issues related to the attorney's fee award.  (Docket no. 124.)

To calculate a reasonable attorney's fee award, courts use the "lodestar method," which requires the court to multiply a reasonable hourly rate by the reasonable number of hours worked. *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010).  "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney."  *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994) (citing *Louisville Black Police Officers Organization v. City of Louisville,* 700 F.2d 268, 277–78 (6th Cir. 1983)).  But "[a]ccording to the law of this circuit, [the court] is required to adjust attorney fee rates to the local market rates for attorneys."  *Swans v. City of Lansing*, 65 F.Supp.2d 625, 647 (W.D. Mich. 1998) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).  The court may also consider several factors in calculating the basic lodestar fee and/or adjustments thereto: "(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee;

(6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 n.8 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471-72 n.3 (6th Cir. 1999) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974))).

The Supreme Court has also provided guidance:

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94-1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

With regard to the reasonableness of the attorney's fees sought by Plaintiff, Defendants assert that this appears to be a fee-driven case, "and at some point[,] fairness and equity must be applied." (Docket no. 128 at 13.) Defendants assert that they have no problem paying Plaintiff $7,000.00 to settle her statutory conversion claims, but they do have a problem paying an additional $175,000.00 in attorney fees, which they claim is twenty-three times the amount of the settlement. (*Id*. at 13, 14.) They calculate that if Plaintiff were to receive the requested fees, the total cost of the litigation would be $252,000.00 over an $8,000.00 car, with only $22,000.00 in

damages actually going to Plaintiff and the remaining $230,000.00 going to Plaintiff's attorneys. (*Id*. at 13.)  Defendants argue that under the Billing Judgment Rule, a party is subject to pay no more in fees than a client would pay on her own, and here, Plaintiff would never pay such excessive and unwarranted attorney's fees for the amount of damages she obtained.  (*Id*. at 14.)

Defendants misrepresent the principle of "billing judgment."  The principle of billing judgment in fee-shifting cases lies on the premise that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis in original) (citation omitted).  Therefore, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Id*.

On appeal, the Sixth Circuit rejected Defendants' undeveloped arguments that the attorney's fees previously requested by Plaintiff were inflated and outrageous on the basis that "'conclusory allegations that the award was excessive and that ... counsel employed poor billing judgment ... do not suffice to establish that there was error.'"  *Al Chami*, 659 F. App'x at 348-49 (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008)).  Despite this signal, Defendants have not challenged the reasonableness of the attorney's fees sought by Plaintiff in the instant Motion with any specificity, *i.e.*, with regard to the number of hours expended or the hourly rates charged by the several attorneys and paralegals who worked on this matter. Defendants' argument that Plaintiff's counsel exercised poor billing judgment is therefore unavailing.

Defendants also claim that the fees requested are unreasonable because they are not proportional to the damages received by Plaintiff.  As Plaintiff points out, however, courts have

held that statutory attorney's fee awards need not be proportional to the amount of damages. (Docket no. 131 at 6-7 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (rejecting the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers); *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 802 (6th Cir. 1996) (attorney's fees awarded under TILA are not limited by the amount of the plaintiff's recovery)).)   Under this precedent, Defendants' argument in this regard is also unavailing.   The undersigned will now proceed to assess the reasonableness of the appellate attorney's fees sought by Plaintiff under the lodestar method.

i.      Reasonable Number of Hours

As stated above, the court must be assured that the hours expended were reasonable.   The court pays attention to whether cases are overstaffed, whether the hours expended were excessive, redundant, and unnecessary.   To assure the reasonableness of the hours expended, attorneys are to give a court sufficient detail to evaluate the fee award. *See Trustees of the Painters Union Deposit Fund v. Interior/Exterior Specialist, Co.*, No. 05-70110, 2011 WL 204750, at *4 (E.D. Mich. Jan. 21, 2011) (Roberts, J.) ("Attorneys who seek fees have an obligation to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case.   The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.") (internal quotation marks and citations omitted).   If the documentation of hours is inadequate, "the district court may reduce the award accordingly."   *Id*. at *5 (citation omitted).

The undersigned has thoroughly reviewed each of the three billing statements submitted by Plaintiff's appellate counsel and finds that they are sufficiently detailed for the court to conduct

a review of the reasonableness of the hours expended.  (*See* docket nos. 124-2, 124-4, 124-5.)  The undersigned also finds that the number of hours expended is, for the most part, reasonable. Nevertheless, the amount of time spent on certain items was excessive or duplicative, or it would otherwise be unreasonably charged to Defendants.   Thus, the following adjustments are recommended:

- Attorney Deepak Gupta and Paralegal Stephanie Garlock spent 3 hours and 1 hour, respectively, on tasks related to the correction of Plaintiff's appellate brief for procedural errors.  The time that Mr. Gupta and Ms. Garlock spent on the corrected brief would not have been necessary absent counsel's errors, so it would not be properly billed to Plaintiff, and under *Hensley,* it is not properly charged to Defendants.

- Likewise, while modest, the 0.25 hours spent by Ms. Garlock drafting and filing a motion for extension of time to file Plaintiff's reply brief is also not properly charged to Defendants.  *See Wright v. Astrue*, No. 06-13252, 2008 WL 878795, at *3 (E.D. Mich. Mar. 28, 2008) ("[T]he time that Plaintiff's counsel devoted to file an extension of time and review the order of the Court granting the extension because of an inability to meet filing deadlines is not properly billed to the government.")

- On April 17, 2015 Attorney Lyngklip billed 0.1 hours for receiving and reviewing Defendants' Notice of Appeal.  He also billed 0.1 hours for receiving and reviewing the Certificate of Service related to Defendants' Notice of Appeal.   On April 23, 2015, Attorney Carl Schwartz billed 0.1 hours for receiving and reviewing Defendants' Notice of Cross-Appeal and 0.1 hours for receiving and reviewing the Certificate of Service related thereto.  The amount time spent on these tasks is excessive, particularly where it should have taken counsel only a moment to glance at the Certificates of Service after reviewing the Notices of Appeal.  Accordingly, the time spent by Mr. Lyngklip and Mr. Schwartz on these tasks should be reduced to 0.1 hours each.

- Attorney Lyngklip spent 0.4 hours on July 9, 2015, 0.7 hours in December 2015, and 0.6 hours in January 2016 on tasks related to three motions to extend filed by Plaintiff.  For the same reason discussed in the second bullet point above, this time should not be charged to Defendants.

- Attorney Lyngklip spent 0.4 hours preparing and filing Plaintiff's Notice of Appeal on April 23, 2015.  On September 18, 2015, he spent 0.7 hours preparing and filing Plaintiff's Notice of Cross-Appeal and the Certificate of Service related thereto.  A review of the Notices of Appeal does not explain the discrepancy in time spent in preparing and filing such substantially similar documents.  The September 18, 2015 billing entry should be reduced by 0.3 hours to 0.4 hours, consistent with the April 23, 2015 billing entry.

- Attorney Lyngklip billed 0.2 hours each for the review or filing of certain one- to two-page standard documents in this matter.  The following billing entries should be reduced to 0.1 hours:
  - 9/22/15 – Receive and review docketing statement re fee appeal
  - 9/22/15 – Receive and review transcript order filed by defendants
  - 9/23/15 – Receive and Review appearance filed by defense counsel
  - 9/30/15 – File appearance in fee appeal

- Attorney Lyngklip created four 0.1-hour billing entries for receiving and reviewing appearances and "other appeal documents from defense counsel" on September 22, 2015.  He also billed 0.1 hours each for receiving and reviewing Defendants' Civil Appeal Statement, transcript order, and Corporate Disclosure Statement on September 22, 2015.  Defendants only filed five, not seven, documents on September 22, 2015.  Thus, two of the billing entries related to receiving and reviewing appearances and "other appeal documents" are duplicative, and Mr. Lyngklip's hours should therefore be reduced by 0.2.

- On October 8, 2015, Attorney Lyngklip spent 0.1 hours filing an appearance in the fee appeal, 0.2 hours filing a civil appeal statement in the fee appeal, and 0.1 hours filing a transcript order in the fee appeal.  All of these documents are corrected versions of documents filed by Mr. Lyngklip on September 30, 2015.  The time spent on these corrected documents would not have been necessary absent Mr. Lyngklip's errors and are therefore not properly charged to Defendants.

- Lastly, on October 9, 2015, Attorney Lyngklip billed 0.1 hours for receiving and reviewing a transcript order filed by Defendants and 0.1 hours for receiving and reviewing a corporate disclosure statement filed by Defendants.  However, Defendants did not file a transcript order or corporate disclosure statement on October 9, 2015 or any other nearby date that is not already accounted for on Mr. Lyngklip's billing statement.  Mr. Lyngklip's hours should be reduced accordingly.

For the reasons stated above, the undersigned recommends that the total number of hours expended by Plaintiff's counsel on this matter be reduced by the following amounts of time:  (1) Attorney Deepak Gupta – 3 hours; (2) Paralegal Stephanie Garlock – 1.25 hours; (3) Attorney Ian Lyngklip – 3.3 hours; (4) Attorney Carl Schwartz – 0.1 hours.

ii.      Reasonable Hourly Rates

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)

(internal quotation marks and citations omitted).  In assessing the reasonable hourly rate, the court should assess the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing market rate is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Addock–Ladd*, 227 F.3d at 350.  "A court may, however, award a higher hourly rate for an out-of-town specialist if (1) hiring the out-of-town specialist was reasonable in the first instance, and (2) if the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Brian A. v. Hattaway*, 83 F. App'x 692, 694 (6th Cir. 2003) (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)).  "A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix*, 65 F.3d at 535 (citation omitted).

The Court begins its analysis of the reasonableness of the hourly rates sought in this matter with those sought by the attorneys and paralegal at the Washington D.C. firm of Gupta Wessler PLLC.  With regard to the hiring of Attorney Gupta and his firm, Attorney Lyngklip explains that one of the issues raised by Defendants on appeal, *i.e.*, whether car dealerships are creditors for the purposes of the ECOA's notice requirements and whether they are required to inform consumers of any adverse action, had been at the root of several adverse rulings in this district.  (Docket no. 124 at 6-7.)  Mr. Lyngklip contends that while authority outside the Sixth Circuit established the correctness of Plaintiff's position on this issue, an adverse ruling by the Sixth Circuit "would likely gut the rights of consumers to obtain the notices required by the ECOA from dealers."  (*Id*.)  It was in light of these "important policy issues" and past adverse actions that Mr. Lyngklip assertedly decided to seek out "an experienced appellate practitioner with credentials appropriate

to the weight of this issue," which he claims would affect the civil rights of consumers in Michigan and likely throughout the country.  (*Id*. at 7.)

Attorney Lyngklip explains that he sought the services of Attorney Gupta in particular because he is one of the leading consumer protection appellate attorneys in the country, having handled appeals before the United States Supreme Court, many of the federal circuits, and some state supreme courts.  (Docket no. 124 at 7-8.)  Mr. Lyngklip also explains that Mr. Gupta is not only a seasoned appellate practitioner, but he also helped mold consumer protection policy while serving as Senior Litigation Counsel and Senior Counsel for Enforcement Strategy at the Consumer Financial Protection Bureau (CFPB).  Mr. Lyngklip further defends his position to hire Mr. Gupta by pointing out that the appeal in this case resulted in the successful defense of the judgment in Plaintiff's favor and a published opinion "which decisively established the rights of consumers with[in] the Circuit."  (*Id*. at 8.)

Attorney Gupta adds in a declaration submitted under the penalty of perjury that Mr. Lyngklip informed him that he was handling Plaintiff's case on a fee-shifting basis and was not able to pay anyone up front to handle the appeal.  (Docket no. 124-3 ¶ 4.)  Mr. Gupta explains that very few qualified appellate specialists in the nation handle appeals on a contingency basis, and he contends that he is not aware of any that do so in Michigan – at least not within the field of federal consumer protection law.  (*Id*.)  Mr. Gupta further explains that Mr. Lyngklip reliably informed him that because of the risk of non-payment, only a handful of attorneys in Michigan are willing to take on consumer cases, and none of them are federal appellate specialists.  (*Id*. ¶ 5.)  Mr. Gupta declares that he took Plaintiff's case because he understood that she would otherwise be unable to find a qualified appellate attorney willing to handle the appeal on a fee-shifting basis.  (*Id*.)  Indeed, "as the Supreme Court observed in connection with contingent-fee arrangements, ...

'in any legal market where the winner's attorney's fees will be paid by the loser ... attorneys [are likely to] view [the] case as too risky (i.e., too unlikely to succeed).'" *Hadix*, 65 F.3d at 535 (quoting *City of Burlington v. Dague,* 505 U.S. 557, 564 (1992)). Under the circumstances explained by Attorneys Lyngklip and Gupta, and without any substantive objection from Defendants in this regard, the undersigned finds that Mr. Lyngklip's decision to hire Mr. Gupta and his firm to handle Plaintiff's appeal on the merits of her claims was reasonable.

The billing records submitted by Attorney Gupta reflect that five people at Gupta Wessler PLLC performed legal work on Plaintiff's appeal: Attorney Gupta, his partner, Attorney Matthew Wessler, Attorney Neil Sawhey, Attorney Jonathan Taylor, and Paralegal Garlock. (Docket no. 124-2.) Attorneys Gupta and Wessler seek a rate of $575.00 per hour, Attorneys Sawhney and Taylor seek a rate of $300.00 per hour, and Ms. Garlock seeks $150.00 per hour. To support the requested hourly rates, Mr. Gupta has submitted the aforementioned declaration, which details the education and experience of each attorney and Ms. Garlock, and a copy of his biography, printed from Gupta Wessler's website. (Docket no. 124-3.)

In his declaration, Attorney Gupta explains that he graduated from Georgetown University Law Center and served as a federal judicial law clerk in the United States District Court for the Eastern District of California. He then went on to work for seven years at Public Citizen, a national consumer advocacy organization in Washington, D.C., where he was the founding Director of its Consumer Justice Project, which focused on class actions and appeals in consumer cases. Mr. Gupta subsequently served as the first appellate lawyer and Senior Litigation Counsel at the CFPB and helped to launch its appellate litigation and amicus program. He left the CFPB in 2012 to establish the law firm of Gupta Wessler, PLLC, where his practice focuses on appellate and complex litigation, with an emphasis on consumer protection, primarily on behalf of plaintiffs.

Mr. Gupta is admitted to the Bars of the U.S. Supreme Court , the U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Eleventh, and D.C. Circuits, and the District of Columbia.  Mr. Gupta's biography contains an extensive list of the cases in which he has briefed and argued in those jurisdictions.  Mr. Gupta has also taught appellate advocacy at Georgetown and American Universities and has made numerous speaking appearances, many of which were focused on consumer protection law.  In his federal appellate practice, he typically charges clients as standard hourly rate of $675.00 or more.  (Docket no. 124-3 at 1, 3-4, 19-46.)

Attorney Wessler graduated from Cornell University Law School in 2005 and then served as a federal judicial law clerk at the circuit- and district-court levels.  He subsequently worked as an associate for two years at Williams & Connolly LLP, described by Mr. Gupta as one of the country's premier litigation law firms, and for six years at Public Justice, P.C., a national public interest and impact litigation firm in Washington, D.C., before becoming a named partner at Gupta Wessler.  Mr. Gupta explains that Mr. Wessler has substantial experience in federal consumer-protection law, and his appellate practice focuses on consumer and worker protection cases, including class actions in the federal appellate courts and the U.S. Supreme Court, for which he charges clients an hourly rate of $675.00 or more.  (Docket no. 124-3 ¶¶ 7-9.)

Attorney Taylor is a 2010 graduate of Harvard Law School who served as a federal judicial law clerk at the Sixth Circuit Court of Appeals before joining Gupta Wessler.  (Docket no. 124-3 ¶ 10.)  Attorney Sawhney is a 2014 graduate of Stanford Law School and served as a judicial law clerk at the Ninth Circuit Court of Appeals before joining Gupta Wessler.  (*Id*.)  Ms. Garlock received her Bachelor of Arts from Harvard University in 2013, and was attending Yale Law School at the time of Mr. Gupta's declaration.  (*Id*. ¶ 11.)

Also in support of the requested hourly rates, Attorney Gupta has submitted a copy of the "Laffey Matrix," a tool developed by the United States Department of Justice and adjusted by the nationwide legal services component of the Consumer Price Index that is used by courts to determine appropriate market rates for attorneys who practice in the Washington, D.C. area. (Docket no. 124-3 at 6, 10-11.)  The Sixth Circuit and a court in this district have used the Laffey Matrix to determine the reasonable hourly rates of Washington, D.C. attorneys where the hiring of Washington, D.C. attorneys was deemed reasonable, and the undersigned will do the same here. *See Adcock-Ladd*, 227 F.3d at 347 n.3, 351; *Entm't Software Ass'n v. Granholm*, No. 05-73634, 2006 WL 6306504, at *3 (E.D. Mich. Nov. 30, 2006).[2]  The Laffey Matrix calculates hourly rates based on the year the work was performed, the number of years the attorney has been out of law school, and an annual inflationary factor.  (Docket no. 124-3 at 10-11.)

Attorney Gupta declares that under the Laffey Matrix, he and Mr. Wessler would be entitled to an hourly rate of $661.00, Attorneys Taylor and Sawhney would be entitled to an hourly rate of $331.00, and Ms. Garlock would be entitled to a rate of $180.00.  (Docket no. 124-3 at 7, 10.)  Mr. Gupta points out the respective hourly rates that they request of $575.00, $300.00, and $150.00 are lower than the rates stated in the Laffey Matrix and the standard hourly rate that Attorneys Gupta and Wessler charge to their clients.  (*Id*. at 7.)  He also asserts that the requested rates are far less than the rates charged by many attorneys of similar experience and expertise in federal appellate courts.  (*Id*. at 8.)  Mr. Gupta further asserts that the firm also exercised sound

---

[2] The undersigned notes the Sixth Circuit's determination in *Adcock-Ladd* that the use of local market rates is more appropriate where out-of-state counsel "volitionally elect[s] to represent a party in a cause to be litigated within the jurisdiction of a court wherein the case was filed, rather than the judicial venue of the lawyer's professional residence." *Adcock-Ladd*, 227 F.3d at 351.  But that rule does not apply here, as Attorneys Lyngklip and Gupta have sufficiently evidenced the special need to hire Gupta Wessler PLLC for the merits appeal.  *See id.*  Additionally, the attorneys and paralegal at Gupta Wessler did not represent Plaintiff before the district court in this jurisdiction.  They represented Plaintiff at the federal appellate level only, and Attorneys Gupta and Wessler declare that they charge a standard hourly rate of $675.00 hour for their work in the Circuit Courts of Appeal, which is more than the rate they seek in this case.

billing judgment by only devoting substantial amounts of time to Plaintiff's appeal at its critical stages and omitting any charges for legal research on Westlaw or ordinary office expenses such as copying and printing.  (*Id.*)  Defendants do not challenge Gupta Wessler's requested hourly rates.

The undersigned finds that Attorney Gupta has sufficiently demonstrated the reasonableness of his firm's requested hourly rates.  Accordingly, the undersigned recommends that Plaintiff be awarded appellate attorney's fees for the work performed by Gupta Wessler, PLLC according to the following lodestar calculation:

| Name | Hours Expended | Hourly Rate | Total Amount |
|------|---------------|-------------|--------------|
| Deepak Gupta | 146.1 | $575.00 | $84,007.50 |
| Matthew Wessler | 10.55 | $575.00 | $6,066.25 |
| Jonathan Taylor | 4.2 | $300.00 | $1,260.00 |
| Neil Sawhney | 2.03 | $300.00 | $609.00 |
| Stephanie Garlock | 19.45 | $150.00 | $2,917.50 |
| **Grand Total** | **182.33** | | **$94,860.25** |

The undersigned next turns to consider whether the hourly rates requested by Attorney Lyngklip and the other members of his law firm are reasonable.  The district judge previously performed an analysis of the hourly rates requested by Attorney Lyngklip and the other members of his law firm for work on this matter and determined, in relevant part, that the following hourly rates were reasonable and would encourage competent representation by experienced counsel in the community:  Attorney Lyngklip - $325.00, Attorney Carl Schwartz - $250.00, Attorney Amanda Longendyke - $200.00, and Paralegal Laura Branco - $100.00.  (Docket no. 80 at 11-14.)  The Sixth Circuit Court of Appeals affirmed these hourly rates on appeal.  *Al Chami*, 659 F. App'x 346.  Attorney Lyngklip now requests an hourly rate of $450.00, Attorney Schwartz requests an hourly rate of $250.00, Attorney Longendyke requests an hourly rate of $200.00, Attorney Bonvolanta requests an hourly rate of $200.00, and Paralegal Branco requests an hourly rate of $125.00.  (Docket nos. 124-4, 124-7, 124-10.)

21

In the initial Motion for Attorney's Fees, Attorney Lyngklip asked to be compensated at his then hourly rate of $400.00,[3] but, as noted above, the district judge determined that a rate of $325.00 was reasonable for an attorney of his experience and expertise. (Docket no. 80 at 10, 11-13.) Attorney Lyngklip now seeks an hourly rate of $450.00 hour. He asserts that this is the current rate at which he bills his clients for work on federal litigation cases and that he does not accept work on federal litigation cases at any lesser rate. (Docket no. 124-7 at 2.) He points out that he was recently awarded fees at an hourly rate of $450.00 by a court in the Western District of Michigan and at a rate of $400.00 by three courts in this district in January 2016, April 2017, and August 2017. (*Id*. at 3; docket no. 135.) Mr. Lyngklip asserts that the court should award him fees at his current hourly rate to account for the delay in payment, that is, for the five years between when the case was filed and when the fee will be awarded. (Docket no. 124 at 4-5, 11-12.)

The United States Supreme Court has held that "[a]n adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989). In reaching this determination, the Court relied on dicta from a previous case:

> When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later.... Meanwhile, their expenses of doing business continue and must be met. In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. See, *e.g., Sierra Club v. EPA,* 248 U.S.App.D.C. 107, 120–121, 769 F.2d 796, 809–810 (1985); *Louisville Black Police Officers Organization, Inc. v. Louisville,* 700 F.2d 268, 276, 281 (CA6 1983).... We do not suggest ... that adjustments for delay are inconsistent with the typical fee-shifting statute. *Id.,* at 716, 107 S.Ct., at 3082.

---

[3] He alternatively sought a blended hourly rate of $304.56 for the work performed by him and the other attorneys and paralegals at his firm, which the district judge rejected. (Docket no. 80 at 9-11.)

*Id.*, 491 U.S. at 282–83 (quoting *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 716 (1987)).  The Sixth Circuit has "occasionally approved the application of current billing rates when doing so was appropriate in reaching a reasonable fee."  *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007) (citing *Barnes v. City of Cincinnati,* 401 F.3d 729, 745 (6th Cir. 2005) (affirming district court's use of the current market rate in calculating plaintiff's attorneys' reasonable hourly rate because the litigation had been ongoing for nearly six years); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,* 684 F. Supp. 953, 958 (6th Cir. 1988) (noting that current rates were appropriate to counterbalance a delay in payment) (reversed on other grounds)).  The decision to award fees at either current or historical rates lies at the discretion of the district court so long as it explains how the decision comports with the goal of awarding reasonable attorney fees. *Id.*

The undersigned notes that the delay in payment is not as great as Attorney Lyngklip suggests, as Plaintiff has already received a significant award of attorney's fees for legal work performed by the members of Lyngklip & Associates through March 2015.  The majority of the fees sought through the instant Motion are for legal work performed from April 2015 through January 2018.  Thus, there is still some delay in payment, which warrants an adjustment to the hourly rate.

Mr. Lyngklip's current hourly rate is $450.00, but that does not necessarily comport with the current prevailing market rates.  The district judge analyzed the hourly rates of the attorneys and paralegals at Lyngklip & Associates for reasonableness by referencing the State Bar of Michigan's 2014 Economics of Law Practice Attorney Income and Billing Rate Summary Report, which reports data from the year 2013.  To account for the aforementioned delay in payment, the undersigned will refer to the State Bar of Michigan's 2017 Economics of Law Practice Attorney

Income and Billing Rate Summary Report (SBM 2017 Report), which reports billing rate data from the year 2017, to determine the current market rates and the reasonableness of the fees sought by Mr. Lyngklip and his employees.

Attorney Lyngklip been practicing law in Michigan for over 26 years.  He is the sole equity member and managing member of Lyngklip & Associates, Consumer Law Center, PLC, located in Southfield, Michigan, where he is responsible for the supervision and training of four attorneys, two paralegals, and a legal assistant.  He has focused his practice on consumer matters since 1995 and has litigated his cases predominately in federal court since 2000.  He is also a member of consumer-law-related organizations and has written several articles, given speeches, and provided training on the subject.  (Docket no. 124-7.)

The SBM 2017 Report reveals that:

- median billing rates for managing partners and equity partners/shareholders at law firms in Michigan is $290.00 and $300.00 per hour, respectively, and the billing rates for those attorneys in 75th percentile is $350.00 and $400.00 per hour;

- the median billing rate for attorneys with 26 to 30 years of experience in Michigan is $250.00 per hour and $328.00 per hour for attorneys in the 75th percentile;

- the median billing rate for attorneys in firms with 4 to 6 attorneys in Michigan is $250.00 per hour and $317.00 per hour for attorneys in the 75th percentile;

- the median billing rate for attorneys at law firms in Southfield, Michigan, is $275.00 per hour and $350.00 per hour for attorneys in the 75th percentile;

- the median billing rate for attorneys practicing consumer law in Michigan is $300.00 per hour and $400.00 per hour for attorneys in the 75th percentile; and

- the median billing rates for attorneys practicing in Oakland County, Michigan, and Wayne County, Michigan, are both $250.00 per hour, and the billing rates for those attorneys in 75th percentile are $325.00 and $317.00 per hour, respectively.

*See* 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report, State Bar        of        Michigan        (published        2018),        *available        at* https://www.michbar.org/file/pmrc/articles/0000153.pdf.

On average, it appears that a rate between $270.00 per hour (median) and $350.00 per hour (75th percentile) is reasonable for Attorney Lyngklip. In light of Mr. Lyngklip's extensive experience and the hourly rates deemed reasonable in recent cases, the undersigned recommends that Plaintiff be awarded fees for Mr. Lyngklip's work at the higher of the two rates, the average 75th percentile billing rate of $350.00 per hour.

Attorneys Schwartz and Longendyke seek the same hourly rate as the reasonable rates assessed by the district judge. Those requested rates continue to be reasonable under the SBM 2017 Report, so they should receive the same here. Attorney Bonvolanta, a junior associate at Lyngklip & Associates, had just been admitted to the bar when he began working on this case, and he worked on the case for about a year. (Docket no. 124-10 at 3.) According to the SBM 2017 Report, the median hourly rate for an attorney with less than one year of experience is $190.00, and the hourly rate in the seventy-fifth percentile is $233.00. On these facts, the undersigned finds that Mr. Bonvolanta's requested hourly rate of $200.00 is reasonable. With regard to Paralegal Branco, the district judge previously assessed a reasonable rate of $100.00 per hour. Ms. Branco now seeks $125.00 per hour, which is her current hourly rate charged to clients as of February 2017. (Docket no. 124-10 at 3.) The undersigned considers the requested $125.00 per hour to be reasonable and in line with consideration of the attorneys' rates under the 2017 figures. Accordingly, the undersigned recommends the following lodestar calculation for the members of Lyngklip & Associates:

| Name | Hours Expended | Hourly Rate | Total Amount |
|---|---|---|---|
| Ian Lyngklip | 57.9 | $350.00 | $20,265.00 |
| Carl Schwartz | 1.8 | $250.00 | $450.00 |
| Amanda Longendyke | 1.7 | $200.00 | $340.00 |
| Michael Bonvolanta | 11.8 | $200.00 | $2,360.00 |
| Laura Branco | 0.5 | $125.00 | $62.50 |
| **Grand Total** | **73.7** | | **$23,477.50** |

The final portion of appellate attorney's fees that Plaintiff seeks are for legal services rendered by Attorney Stacy M. Bardo of Bardo Law, P.C., located in Chicago, Illinois. Specifically, Plaintiff seeks $7,700.00 in fees for 15.4 hours of work performed at an hourly rate of $500.00 per hour.  (Docket no. 124-5, docket no. 124-6 at 3.)  Attorney Lyngklip explains that he hired Ms. Bardo to assist with Plaintiff's appeal of the district court's attorney's fee award because he determined that an independent review of the fee award and points of appeal would enhance the likelihood of success in defending the award and framing issues concerning the court's twenty-percent reduction in fees.  (Docket no. 124 at 9-10.)  Mr. Lyngklip further explains that he selected Ms. Bardo after review of available attorneys with experience in both consumer protection and fee issues.  And he asserts that the successful result of the fee appeal establishes the wisdom of that choice.  (*Id.* at 10.)

Attorney Lyngklip's decision to hire outside counsel to assist with Plaintiff's fee appeal is not unreasonable.  But the general explanation provided by Mr. Lyngklip for hiring Attorney Bardo in particular, an out-of-state attorney who charges a higher rate than in typical in-state attorneys, does not convince the undersigned that his decision to do so was reasonable.  Mr. Lyngklip does not assert that Ms. Bardo has expertise in litigating consumer protection attorney's fee appeals that was necessary to the litigation.  And he has not demonstrated or even asserted that there were no local attorneys in the Eastern District of Michigan, or Michigan generally, with the requisite resources, expertise, or willingness to assist with Plaintiff's fee appeal.  *See The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016); *Int'l-Matez Tank Terminals-Ill. v. Chem. Bank*, No. 1:08-cv-1200, 2010 WL 3238917, at *5 (W.D. Mich. Aug. 16, 2010) (citations omitted).  For this reason, the undersigned will not recommend a fee award based on the higher

hourly rates in Chicago and will instead rely on the SBM 2017 Report as evidence of reasonableness in determining Ms. Bardo's appropriate hourly rate.

Attorney Bardo graduated from Loyola University Chicago School of Law in May 2000 and was employed as an attorney at the Consumer Advocacy Center, P.C. from November 2000 to September 2015, when she left to establish her own consumer law practice, Bardo Law, P.C. She serves as Co-Chair to the Board of Directors for the National Association of Consumer Advocates and is an active member of the Chicago Bar Association's Consumer Law Committee, among other things. She also speaks routinely on consumer law topics at various conferences and events. (Docket no. 124-6.) Based on the information provided, the SBM 2017 Report provides that:

- the median billing rate for attorneys with 16 to 25 years of experience in Michigan is $253.00 per hour and $325.00 per hour for attorneys in the 75th percentile; and

- the median billing rate for attorneys practicing consumer law in Michigan is $300.00 per hour and $400.00 per hour for attorneys in the 75th percentile.

Accordingly, it appears that an hourly rate between $253.00 and $400.00 is reasonable for Attorney Bardo. In light of these rates and the fact that Ms. Bardo has less experience than Attorney Lyngklip, the undersigned recommends that Ms. Bardo be afforded a reasonable hourly rate of $325.00. That rate multiplied by the 15.4 hours that Ms. Bardo worked on this case results in a recommended attorney's fee award of $5,005.00.

### 2. Post-Remand Attorney Fees

Plaintiff seeks a $22,055.00 award of attorney's fees for 53.4 hours of legal work performed by members of Lyngklip & Associates following the Sixth Circuit's remand of the case to this court for further consideration of Plaintiff's claim for injunctive relief under the ECOA, Plaintiff's statutory conversion claims, and a recalculation of the twenty-percent attorney fee

reduction.  (Docket no. 124 at 3, 10-11.)  After remand, the parties engaged in dispositive motion practice with regard to Plaintiff's statutory conversion claims, and Plaintiff withdrew her claim for injunctive relief under the ECOA.  The court then denied Plaintiff's Motion for Summary Judgment on the conversion claims and set the matter for trial.  (Docket no. 112.)  On November 27, 2017, two weeks before the trial was set to commence, the parties stipulated to the entry of an order resolving Plaintiff's conversion claims for $7,000.00 in damages and setting the deadline for Plaintiff's attorney's fee petition for sixty days from the date of the order.  (Docket no. 120.)  This timely-filed Motion for Attorney's Fees followed.

As noted above, Defendants contend that Plaintiff's request for the attorney's fees related to her state-law conversion claims incurred post-remand should be denied because the court lost subject matter and supplemental jurisdiction over Plaintiff's conversion claims as soon as Plaintiff withdrew her ECOA claim for injunctive relief, and therefore, the court does not have jurisdiction to resolve Plaintiff's request for attorney's fees related to those claims.  (Docket no. 128 at 6, 15, 17-21, 23-25.)  Defendants' argument lacks merit.  Defendants seem to think that a federal court is automatically divested of jurisdiction over state-law claims when all of the federal claims have been dismissed.  That is not what the law says.  28 U.S.C. § 1367(c)(3) provides that a district court *may*, not must, decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3) (emphasis added).  The plain language of the statue provides that the determination of whether to exercise supplemental jurisdiction over any state-law claims remaining after the dismissal of all federal claims is left to the sound discretion of the district court.  *See also Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) ("A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims."); *Scott v. Clay Cty., Tenn.*, 205 F.3d 867,

880 (6th Cir. 2000).  Indeed, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims," but "there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims."  *Musson*, 89 F.3d at 1254-55 (citations omitted).

To the extent that Defendants challenge the court's discretionary exercise of supplemental jurisdiction over Plaintiff's statutory conversion claims on remand after Plaintiff withdrew her remaining federal claim, the challenge is not properly before or reviewable by the undersigned. And to the extent that Defendants challenge an award of attorney's fees to Plaintiff on the basis that the court's discretionary exercise of supplemental jurisdiction was improper, the only portion of attorney's fees sought by Plaintiff that could be affected by such a lack of jurisdiction are the fees discussed in this section, *i.e.*, those incurred by Plaintiff in litigating her statutory conversion claims following remand by the Sixth Circuit.  As discussed next, the undersigned recommends denying Plaintiff's request for these fees on the alternative grounds raised by Defendants.

Defendants argue that Plaintiff is not a prevailing party on her claims of statutory conversion because the claims were resolved by settlement and not by a judgment or consent decree, so she is not entitled to an award of attorney's fees on those claims.  (*Id*. at 12, 14, 27-29.) For purposes of an award of attorney's fees under the fee-shifting statutes, "[a] 'prevailing party' is one who has been awarded some relief by the court."  *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).  The relief may come through either an enforceable judgment on the merits or a settlement agreement enforced by a court-ordered consent decree, as those devices create the judicially-sanctioned change in the legal relationship of the parties necessary to permit an award of attorney's fees.  *Id*. at 604-05 (citations omitted); *see also Woods v. Willis*, 631 F. App'x 359, 363-64 (6th Cir. 2015).  "Private settlement

agreements do not confer prevailing party status," as they "do not entail the judicial approval and oversight involved in consent decrees." *Toms v. Taft*, 338 F.3d 519, 528-29 (6th Cir. 2003) (quoting *Buckhannon*, 532 U.S. at 604 n.7).

Here, on November 27, 2017, the court entered a "Stipulated Order Resolving Final Claim for Damages and Setting Time for Fee Petition." (Docket no. 120.) The Order indicated that Defendants agreed to pay Plaintiff damages in the amount of $7,000.00 on her statutory conversion claims. The Order also provided that Plaintiff could file a petition for attorney's fees within sixty days. On the court's docket, the Order is titled, "Stipulated Order of Dismissal."

In *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015), the Sixth Circuit considered whether a district court's incorporation of a settlement agreement into its dismissal order converted the order into a consent decree. In doing so, the court considered the differences between consent decrees and private settlements:

> "A consent decree is essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983). Consent decrees typically have two key attributes that make them different from private settlements. First, when a court enters a consent decree, it retains jurisdiction to enforce the decree. *Id.* In contrast, the parties to a private settlement typically must bring another suit (for breach of contract) to enforce it. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Second, a consent decree puts "the power and prestige of the court behind the compromise struck by the parties." *Williams,* 720 F.2d at 920. The same is not true of a dismissal order that does not incorporate the parties' terms.

*Id*. The court held that the district court's dismissal order in that case was a consent decree because it had both of the key attributes. *Id*. at 872.

The Stipulated Order in this case contains the parties' settlement terms, but the court did not retain jurisdiction to enforce compliance with those terms. Thus, the Stipulated Order is not a consent decree, and it lacks the judicial imprimatur necessary to confer prevailing party status on Plaintiff for purposes of an award of attorney's fees on her statutory conversion claims on remand.

"The party seeking fees bears the burden of proving that it was a prevailing party with respect to the work done to generate them."  *United States v. Tennessee*, 780 F.3d 332, 336 (6th Cir. 2015).  Plaintiff prevailed on some of her claims at the district-court level prior to appeal and on all of the issues raised by the parties at the appellate-court level, and she is therefore entitled to attorney's fees for the legal work performed in those segments of this litigation.  But Plaintiff did not prevail on her statutory conversion claims on remand, which were the only claims litigated by the parties at that juncture, and she therefore cannot prove that she was a prevailing party with respect to the legal work performed by counsel that generated the post-remand attorney's fees that she now seeks.  Accordingly, the undersigned recommends that Plaintiff's Motion for the attorney's fees that she incurred on remand for the legal work performed on her statutory conversion claims be denied.[4]

A review of the billing summary submitted by Attorney Lyngklip reveals that the attorney's fees generated on remand for the litigation of Plaintiff's statutory conversion claims are easily segregable from the other attorney's fees generated on remand, which were primarily related to securing the release of the previous bond posted by Defendants and the instant Motion for Attorney's Fees, and to which Plaintiff is entitled.[5]  (*See* docket no. 124-8.)  Having separated the former from the latter, it is recommended that Plaintiff be awarded the following attorney's fees that she incurred on remand for legal work not related to her statutory conversion claims:

| Name | Hours Expended | Hourly Rate | Total Amount |
|---|---|---|---|
| Ian Lyngklip | 12.5 | $350.00 | $4,375.00 |
| Bryan Kontry | 2.9 | $200.00 | $580.00 |
| Laura Branco | 0.4 | $125.00 | $50.00 |

[4] In light of this recommendation, the undersigned does not reach Defendants' argument that the court must apply state law in determining the reasonableness of the attorney's fees related to Plaintiff's conversion claims in the absence of federal jurisdiction.

[5] The *Coulter* rule, which previously capped the number of hours allowed for preparing and litigating the attorney's fee case to 3% of the hours in the main case, *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986), was recently abrogated by the Sixth Circuit in *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 725 (6th Cir. 2016).

| Grand Total | 15.8 | | $5,005.00 |
|---|---|---|---|

### 3.    Pre-Appeal Attorney Fees

Plaintiff filed her initial Motion for Attorney Fees on May 25, 2015.  (Docket no. 70.)

After performing a lodestar calculation, the court awarded Plaintiff $71,633.00 in attorney's fees

for 241.86 hours of work, but in consideration of the *Johnson* factors, the court reduced that

amount by twenty percent, to $57,306.40, based on the lack of Plaintiff's success on her conversion

claims:

> The critical factor here is the results obtained. Plaintiff first filed a ten-count
> lawsuit, which was amended to contain twelve counts. (Dkts. 1, 32.) Her four
> conversion claims were dismissed, while plaintiff was granted summary judgment
> on three claims and settled the remaining five. The conversion claims were based
> on allegations—namely, defendants' retention of her car after revocation of the
> financing agreement—that were factually and legally distinct from, in particular,
> the statutory claims on which plaintiff was granted summary judgment. Those
> claims concerned the revocation of credit and imposition of undisclosed fees, rather
> than the retention of the car following those acts.
>
> Some of the claims that plaintiff settled shared common legally operative
> facts with the conversion claims. However, the conversion claims were barred both
> by Michigan law and by the manner in which plaintiff pleaded her conversion and
> breach of contract claims. Some reduction in fees is warranted. Accordingly,
> plaintiff's lack of success as to her conversion claims warrants a reduction of twenty
> percent, to $57,306.40.

(Docket no. 80 at 16-18.)  Plaintiff and Defendants appealed the court's ruling on attorney's fees.

(Docket nos. 84, 88, 90.)

On appeal, the Sixth Circuit affirmed the court's lodestar calculation, but because it

reversed the court's dismissal of Plaintiff's statutory conversion claims, it concluded that the

court's blanket twenty-percent reduction of the attorney's fee award was premised on a clearly

erroneous finding of fact.  *Al Chami*, 659 F. App'x at 349.  The Sixth Circuit added the following

in a footnote:

> We note, however, that the propriety of the district court's blanket twenty-percent reduction—with little explanation for that particular percentage—is questionable. We have repeatedly admonished district courts for resorting to the expediency of "mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed." *Imwalle*, 515 F.3d at 554 (internal quotation marks omitted). We have held, moreover, that "[w]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996). In any event, the district court should be mindful of its obligation "to give a clear explanation of the fee award." *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004).

*Id*. at 349 n.2.  Ultimately, the Sixth Circuit reversed the twenty-percent reduction in the fee award and remanded the matter for recalculation in light of its holding on the appeal of Plaintiff's statutory conversion claims.  *Id*.

In the instant Motion, Plaintiff seeks to recover the $14,326.60 in attorney's fees omitted from the initial fee award as a result of the twenty-percent reduction.  (Docket no. 124 at 3, 5-6.) While Plaintiff prevailed on her appeal of the court's order dismissing her statutory conversion claims, she is not a prevailing party on those claims in this court for purposes of an award of attorney's fees, because the parties resolved the claims through a private settlement.  Thus, Plaintiff is not entitled to attorney's fees for the work performed by counsel on those claims in the original proceedings.

Nevertheless, unlike the post-remand proceedings where the work performed by counsel in litigating Plaintiff's statutory conversion claims was easily segregable from the other work performed, the work performed by Plaintiff's counsel on Plaintiff's statutory conversion claims in the original proceedings is not so easily segregable.  This is because a review of the billing summary submitted by Plaintiff in support of her initial Motion for Attorney's Fees reveals that much of counsel's time was devoted generally to the litigation as a whole, which makes it difficult to extract the hours expended on Plaintiff's statutory conversion claims.  (*See* docket no. 76-1; *see*

*Hensley*, 461 U.S. at 435.)  The only discernible time spent solely on the statutory conversion claims relates to Plaintiff's Motion for Reconsideration of the court's dismissal of those claims. Accordingly, in light of the Sixth Circuit's reminder of its holdings in *Imwalle* and *Thurman, supra,* the undersigned recommends that the initial attorney's fee award be reduced only by the discernible time spent and billed by Plaintiff's counsel on the Motion for Reconsideration regarding Plaintiff's statutory conversion claims, as follows:

| Name | Hours Expended | Hourly Rate | Total Amount |
|---|---|---|---|
| Ian Lyngklip | 13.5 | $325.00 | $4,387.50 |
| Amanda Longendyke | 0.4 | $200.00 | $80.00 |
| **Grand Total** | **13.9** | | **$4,467.50** |

(*See* docket no. 76-1 at 9-12.)  Accordingly, it is further recommended that the remainder of the initial reduction in fees, $9,859.10 ($14,326.60-$4,467.50), be disbursed to Plaintiff.

> ### 4.    Costs

In the instant Motion for Attorney's Fees, Plaintiff also seeks the taxable and non-taxable costs that she incurred on appeal.  (Docket no. 124 at 3, 12-13; docket no. 124-11.)  Plaintiff filed a Bill of Costs with the court on January 25, 2018, asking the Clerk of the Court to approve and tax $1,010.00 in costs for filing two Notices of Appeal in this matter.  (Docket no. 122.)  The Clerk denied Plaintiff's request for costs on January 26, 2018, stating:

> The U.S. Court of Appeals mandated that both appeals are affirmed in part, reversed in part, and remanded for further proceedings. (See opinions, docket entries 98 and 99, and mandates, docket entries 100 and 101.) Pursuant to FRAP 39(a)(4), if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

(Docket no. 123.)  Federal Rule of Civil Procedure 54(d)(1) provides that the court may review the Clerk's action on motion served within seven days.  Fed. R. Civ. P. 54(d)(1).  Plaintiff filed the instant Motion for Attorney's Fees the same day as the Clerk's denial, again requesting

reimbursement of the cost of filing the Notices of Appeal.  The undersigned construes this portion of Plaintiff's Motion as a Rule 54(d)(1) motion for review of the Clerk's decision.

Federal Rule of Appellate Procedure 39(e) provides that the fee for filing the notice of appeal is taxable in the district court for the benefit of the prevailing party on appeal.  Fed. R. App. P. 39(e).  As previously discussed, Plaintiff prevailed on all issues at the Sixth Circuit.  Plaintiff should therefore be awarded $1,010.00 in taxable costs.

Additionally, "the Sixth Circuit has allowed reasonable non-taxable costs as a part of the prevailing party's 'reasonable attorney's fee' under . . . fee-shifting statutes."  *Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 771-72 (E.D. Mich. 2014) (citing *Northcross v. Bd. of Educ. of Memphis City Schs.,* 611 F.2d 624, 639 (6th Cir.1979) (overruled on other grounds)).  Non-taxable costs are "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services," such as reasonable photocopying, paralegal expenses, and travel and telephone costs."  *Northcross*, 611 F.2d at 639.

Here, Plaintiff seeks the expenses incurred by Attorneys Gupta and Lyngklip in traveling to Cincinnati for oral argument at the Sixth Circuit:  $669.75 for Mr. Gupta's airfare, $157.55 for Mr. Gupta's hotel, $289.44 in mileage for Mr. Lyngklip, and $198.58 for Mr. Lyngklip's hotel.  (Docket no. 124-11 at 1.)  These travel-related expenses appear to be reasonable, and Plaintiff should be reimbursed therefor.

Plaintiff also seeks reimbursement for Attorney Lyngklip's use of an outside paralegal service, located in Richmond, Virginia, to format and compose the table of contents and the table of authorities for Plaintiff's appellate and reply briefs on the attorney's fee appeal.  (Docket nos. 124-12, 124-13.)  The paralegal spent two hours on these tasks for Plaintiff's appellate brief, one

of which was charged at a rate of $200.00 per hour and the other at an overtime rate of $600.00 per hour.  The paralegal spent 0.5 hours on the reply brief at the $200.00 hourly rate.  Plaintiff also paid this service to file the briefs at a fee of $75.00 each.  Mr. Lyngklip has provided no basis for hiring this outside service instead of utilizing the services of his in-house paralegals, whose reasonable hourly rate is significantly less at $125.00 per hour, and whom he would not have had to pay an additional $150.00 to file the briefs.  Accordingly, the undersigned recommends that Plaintiff only be reimbursed for a portion of these expenses – for 2.5 hours of work at $125.00 per hour, a total of $312.50.  In sum, a total award of $2,637.82 in costs is recommended.

### D.    Conclusion

For the above-stated reasons, Plaintiff's Motion for Attorney's Fees (docket no. 124) should be **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff should be awarded the following attorney's fees and costs:

| Billing | Total Amount |
|---|---|
| Appellate Fees (Deepak Gupta) | $94,860.25 |
| Appellate Fees (L&A) | $23,477.50 |
| Appellate Fees (Bardo Law) | $5,005.00 |
| Fees After Remand (L&A) | $5,005.00 |
| Fees Deducted from Initial Award | $9,859.10 |
| Taxable and Non-taxable Costs | $2,637.82 |
| **Grand Total** | **$140,844.67** |

Additionally, Plaintiff's Motion for Status Conference (docket no. 137) should be **DENIED** as moot.

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474

U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991);

*U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.

1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

  Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection

must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not

later than fourteen days after service of an objection, the opposing party must file a concise

response proportionate to the objections in length and complexity. The response must specifically

address each issue raised in the objections, in the same order and labeled as "Response to Objection

#1," "Response to Objection #2," etc.

Dated:  April 17, 2019    s/ Mona K. Majzoub
          MONA K. MAJZOUB
          UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

  I hereby certify that a copy of this Report and Recommendation was served upon counsel
of record on this date.

Dated:  April 17, 2019    s/ Leanne Hosking
          Case Manager